UNITED STATES of America, Appellee,

v.

**Irvin R. MORRIS, Defendant, Appellant.**

UNITED STATES of America, Appellee,

v.

**Stuart L. SMITH, Defendant, Appellant.**

Nos. 96–1251, 96–1252.

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1996.

Decided Nov. 6, 1996.

---

William Maselli, Auburn, ME, for appellant Morris.

Theodore A. Barone, with whom William F. Sullivan, Sullivan and Largey, and Perkins, Smith & Cohen were on brief, for appellant Smith.

F. Mark Terison, Assistant United States Attorney, Boston, MA, with whom Jay P. McCloskey, United States Attorney, and Jonathan A. Toof, Assistant United States Attorney, were on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

SELYA, Circuit Judge.

These interlocutory appeals question whether the acquittal of appellants Irvin R. Morris and Stuart L. Smith on charges of conspiracy to distribute marijuana bars the government from now prosecuting them on charges of conspiracy to defraud the Internal Revenue Service (IRS). The district court answered this question in the negative. Concluding, as we do, that neither double jeopardy nor collateral estoppel principles preclude continued prosecution of the tax conspiracy charge, we affirm.

### I.

#### Background

In 1994, a federal grand jury returned a three-count indictment against the appellants and seven other persons.[1] Count 1 charged the appellants (and others) with conspiracy to distribute and to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) & 846 (1994). Count 2 sought criminal forfeiture of property used in or derived from the marijuana conspiracy. See 21 U.S.C. § 853 (1994). Count 3 charged the appellants (and others) with conspiracy to defraud the IRS in the determination and

collection of income taxes, in violation of 18 U.S.C. § 371 (1994).

The district court severed count 3 and proceeded to trial on the other counts. The jury returned a "not guilty" verdict on count 1, putting an end to that charge and also eviscerating count 2. The appellants then moved to dismiss count 3 on double jeopardy and collateral estoppel grounds. The district court denied the motions. These interlocutory appeals ensued. See Abney v. United States, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977) (holding that pretrial orders rejecting double jeopardy claims premised on successive prosecutions are immediately appealable).[2] Inasmuch as the appeals challenge the district court's application of the law rather than its factfinding, our review is plenary.

### II.

#### Double Jeopardy

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The Clause has three aspects: it shields a defendant from a second prosecution for the same offense after either conviction or acquittal, and it also prohibits multiple punishments for the same offense. See United States v. Stoller, 78 F.3d 710, 714 (1st Cir.1996), cert. dismissed, —— U.S. ——, 117 S.Ct. 378, 136 L.Ed.2d 297 (1996); United States v. Caraballo–Cruz, 52 F.3d 390, 391 (1st Cir.1995); United States v. Rivera–Martinez, 931 F.2d 148, 152 (1st Cir.), cert. denied, 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991). Here, the appellants invoke the Clause's protection against successive prosecutions. The resolution of their claim turns on whether the tax

---

1. Because these appeals do not involve any of the seven codefendants, we minimize further references to them in describing the indictment and ensuing trial.

2. *Abney* involved multiple prosecutions. 431 U.S. at 662, 97 S.Ct. at 2041–42. Cases that implicate multiple punishments arguably raise different jurisdictional concerns for appellate courts. *See United States v. Ramirez–Burgos,* 44 F.3d 17, 18–19 (1st Cir.1995) (dismissing for want of jurisdiction an interlocutory appeal

stemming from the rejection of a multiple punishments claim asserted in connection with parallel counts contained in a single indictment); *see also United States v. Stoller,* 78 F.3d 710, 715 & n. 2 (1st Cir.1996) (indicating uncertainty as to the continued vitality of *Ramirez–Burgos* in light of emergent Supreme Court precedent), *cert. dismissed,* —— U.S. ——, 117 S.Ct. 378, 136 L.Ed.2d 297 (1996). Because these appeals, like *Abney* itself, involve the successive prosecution branch of the Double Jeopardy Clause, we have jurisdiction to hear and determine them prior to trial.

conspiracy is the same offense as the marijuana conspiracy for double jeopardy purposes.

The Supreme Court has authored a black-letter rule for use in determining when double jeopardy principles prohibit prosecution under two distinct statutory provisions: "where the same act or transaction constitutes a violation of [both] statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). If the crimes charged are discrete offenses within the contemplation of *Blockburger,* the defendant may be prosecuted consecutively for them, even if the crimes arise out of the same conduct or nucleus of operative facts. *See United States v. Parrilla–Tirado,* 22 F.3d 368, 372 (1st Cir.1994). Thus, the *Blockburger* rule depends on statutory analysis, not on evidentiary comparisons.

■ Having carefully examined the record, we conclude, as did the court below, that the tax conspiracy and the marijuana conspiracy are separate offenses. To establish the tax conspiracy, the government must prove that the conspiracy existed, that the defendants agreed to participate in it, and that at least one overt act was perpetrated in furtherance of the goal of defrauding the United States. *See United States v. Cambara,* 902 F.2d 144, 146–47 (1st Cir.1990). To establish the marijuana conspiracy, the government had to prove that the conspiracy existed, that the defendants agreed to participate in it, and that they intended to possess and distribute marijuana. *See United States v. Sepulveda,* 15 F.3d 1161, 1173 (1st Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994). Thus, the primary objects of the two conspiracies are different, and each of the charged crimes includes an element that the other does not.

These differences are brought home by parsing the indictment in this case. In respect to count 3, the government needs to prove at trial that the appellants specifically intended to defraud the IRS and that they undertook at least one overt act in further-ance of that conspiracy—proof that is extraneous to establishing the marijuana conspiracy. In respect to count 1, however, the government needed to prove at trial that the appellants intended to distribute marijuana—proof that is extraneous to establishing the tax conspiracy. On this basis, the two charges constitute distinct offenses under *Blockburger. See, e.g., United States v. Gomez–Pabon,* 911 F.2d 847, 861–62 (1st Cir. 1990) (holding that a conspiracy to import cocaine and a conspiracy to possess cocaine with intent to distribute are distinct offenses because they differ "in what they specify as the proscribed object of the conspiracy"), *cert. denied,* 498 U.S. 1074, 111 S.Ct. 801, 112 L.Ed.2d 862 (1991); *United States v. Rodriguez,* 858 F.2d 809, 817 (1st Cir.1988) (holding that conspiracy to distribute cocaine and aiding and abetting the possession of cocaine with intent to distribute are distinct offenses and may be charged separately even if both arise out of the same transaction because each requires proof of an element that the other does not). Hence, trying the appellants on count 3 will not violate the Double Jeopardy Clause.

The appellants decry this analysis as excessively technical. They hawk three separate, but related, rejoinders: (1) that the government will introduce at a future trial much the same evidence which it used in the previous trial; (2) that despite the proliferation of counts the government in fact alleged only a single conspiracy involving distribution of marijuana *and* concealment of the profits derived therefrom; and (3) that the district court misapplied this court's gloss on the test for determining when two separately charged conspiracies are deemed synonymous for double jeopardy purposes. These asseverations lack force.

■ **1. *Same Evidence.*** The Supreme Court has never endorsed a blanket rule prohibiting the government from using the same evidence to prove two different offenses against a single defendant. To be sure, at the high-water mark for double jeopardy protection the Court briefly adopted a "same conduct" test. *See Grady v. Corbin,* 495 U.S. 508, 521, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990). But the Court laid waste to

**480**

*Grady* in fairly short order and confirmed that the performance of a *Blockburger* analysis completes the judicial task in a successive prosecution case. *See United States v. Dixon,* 509 U.S. 688, 712, 113 S.Ct. 2849, 2864, 125 L.Ed.2d 556 (1993) (overruling *Grady* ). Consequently, the appellants' "same evidence" argument fails.

■ **2. Singularity of the Conspiracy.** The appellants' assertion that the government alleged only one overarching conspiracy is no more than a play on words. Even if the transactions on which the charges rest are intertwined—the "best case" assumption for the appellants, and a matter on which we need not opine—this datum would not alter the outcome of a *Blockburger* inquiry. "It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause," and this tenet "is true even though the 'single transaction' is an agreement or conspiracy." *Albernaz v. United States,* 450 U.S. 333, 344 n. 3, 101 S.Ct. 1137, 1145 n. 3, 67 L.Ed.2d 275 (1981).

■ Whether a particular course of conduct involves one or more distinct offenses depends on congressional choice, and the Double Jeopardy Clause offers little limitation on that choice. *See Sanabria v. United States,* 437 U.S. 54, 69–70, 98 S.Ct. 2170, 2181–82, 57 L.Ed.2d 43 (1978). This principle readily disposes of the appellants' argument. As we already have shown, Congress defined the tax conspiracy and the marijuana conspiracy such that each requires proof of a fact that the other does not.

**3. Segregating Distinct Conspiracies.** Finally, the appellants urge us to find that they are shielded from prosecution for the tax conspiracy because of the imbrication between it and the marijuana conspiracy. In framing this exhortation the appellants pin their hopes on *United States v. Booth,* 673 F.2d 27, 29 (1st Cir.), *cert. denied,* 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853 (1982), in which we set out a five-part test for determining whether two conspiracies are synonymous for double jeopardy purposes. Here, four-fifths of the test falls neatly into place: it is undisputed that the tax and marijuana conspiracies took place contemporaneously (or nearly so); that they involved essentially the same personnel; that they occurred at much the same places; and that most of the evidence that the government introduced in its failed effort to prove the marijuana conspiracy will be offered anew in a future endeavor to prove the tax conspiracy. Nevertheless, there is a missing link; the appellants cannot pass the fifth part of the test because the two conspiracies are premised on separate statutory provisions.

This divagation is fatal to the appellants' contention. The rationale underlying *Booth* stems from a recognition of the danger that, in conspiracy cases, the government might comply with the letter of *Blockburger* while evading its spirit by partitioning a single conspiracy into separate prosecutions. *See id.* The *Booth* test is thus aimed at limiting prosecutorial abuse, not at circumscribing congressional power to define multiple offenses that occur during a single course of conduct. Because separate statutory provisions are involved in the two conspiracies limned in this case, a subsequent prosecution on count 3 will not offend the Double Jeopardy Clause. *See Gomez–Pabon,* 911 F.2d at 861–62.

## III.

### Collateral Estoppel

■ It is settled beyond cavil that the Double Jeopardy Clause encompasses the doctrine of collateral estoppel. *See Ashe v. Swenson,* 397 U.S. 436, 444–45, 90 S.Ct. 1189, 1194–95, 25 L.Ed.2d 469 (1970); *United States v. Dray,* 901 F.2d 1132, 1135 (1st Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 245, 112 L.Ed.2d 204 (1990). This doctrine ensures that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194. In a criminal case, a defendant who wishes to wield this doctrinal weapon against the government bears the burden of demonstrating that the issue he seeks to foreclose was in fact settled by the first proceeding. *See Dowling v. United States,* 493 U.S. 342,

350–51, 110 S.Ct. 668, 673–74, 107 L.Ed.2d 708 (1990).

■ The appellants thus face a formidable task: they must show that the first trial *necessarily* decided that they were not involved in the tax conspiracy. *See Schiro v. Farley*, 510 U.S. 222, 236, 114 S.Ct. 783, 792, 127 L.Ed.2d 47 (1994). Of course, we must interpret this statement of the appellants' task in a practical manner: a criminal defendant who raises a potential collateral estoppel bar should not be—and is not—held to a standard of absolute certainty. A court's approach must be pragmatic in order to prevent the rejection of a collateral estoppel defense in every case in which the prior judgment was based on a general verdict of acquittal. *See Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194 (warning against courts being too "technically restrictive"). If all proffered explanations for why a jury's verdict does not decide an issue are frankly implausible, collateral estoppel ought to bar relitigation of the issue. *See Dray*, 901 F.2d at 1137.

■ It is against this legal backdrop that we inspect the particulars of the case at bar. To determine whether the appellants can clear the collateral estoppel hurdle, we must undertake whole-record review. *See, e.g., Rossetti v. Curran*, 80 F.3d 1, 4 (1st Cir. 1996). After all, collateral estoppel cases necessarily "require an examination of the entire record to determine whether the jury could have 'grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Schiro*, 510 U.S. at 236, 114 S.Ct. at 792 (quoting *Ashe* ).

■ The appellants argue vehemently that the jury at the first trial must have determined that they were not involved in the conspiracy described in count 1—a conspiracy which they visualize as encompassing three facets: obtaining marijuana, distributing it, and hiding the proceeds from the government. We think that this character-

ization misstates the conspiracy that the government alleged. We explain briefly.

Our explanation starts with an acknowledgement that the premise implicit in the appellants' argument is sound. Under an indictment alleging that a defendant's role in the marijuana conspiracy was to conceal the proceeds, that defendant potentially could be found guilty of conspiracy to distribute and possess with intent to distribute marijuana even though he did not personally deal drugs. *See generally United States v. David*, 940 F.2d 722, 735 (1st Cir.) (noting that, in a chain conspiracy, the law holds a conspirator "accountable for the earlier acts of his coconspirators in furtherance of the conspiracy"), *cert. denied*, 502 U.S. 989, 112 S.Ct. 605, 116 L.Ed.2d 628 (1991); *United States v. Baines*, 812 F.2d 41, 42 (1st Cir. 1987) (similar). But count 1 of the indictment in this case is too narrowly drawn to animate that premise—it alleged in effect that Smith and Morris were *directly* involved in marijuana distribution—and the trial judge instructed the jury that the government must prove "the conspiracy described in the indictment." Thus, the jury would have been bound under count 1 and the district court's elucidation of it to acquit a defendant whose only involvement was to launder the funds generated by the principals' operation of the marijuana conspiracy.

Equally as important, count 1 of the indictment sets out a conspiracy to distribute and possess with intent to distribute marijuana, not a conspiracy to defraud the IRS. In it, the government avers that the appellants "consigned, entrusted, and distributed marijuana," but the count nowhere attempts to describe how the conspirators concealed the proceeds of the marijuana distribution from prying eyes.[3] This lack of connectedness is critical, for, as we mentioned earlier, the district court instructed the jury that the government had to prove beyond a reasonable doubt "that the conspiracy described in

---

**3.** The closest count 1 comes to stating that the appellants conspired to defraud the IRS is its averment that they "used cash, bank checks, and money orders to further the objectives of the conspiracy, to wit, the acquisition, receipt, storage, consignment and distribution of large amounts of marijuana, thereby deriving substantial cash proceeds." But this allegation falls far short of specifying whether (and if so, how) the appellants conspired to launder drug proceeds and deprive the government of tax revenue.

[count 1] was willfully formed and was existing at on or about the time alleged in the indictment." Hence, the jury's decision that the appellants were not guilty of the conduct described in count 1 does not rule out the possibility that the appellants nonetheless may have conspired to defraud the IRS as alleged in count 3.[4] Because the record as a whole (i.e., the indictment, the evidence, the arguments of counsel, and the jury instructions) reveals more than one plausible basis for the acquittals, we must reject the appellants' collateral estoppel claim. *See Dray,* 901 F.2d at 1139 (explaining that there is no collateral estoppel if an inquiring court is "left with a choice among a variety of plausible theories" as to why the jury acquitted at an earlier trial).

To put some meat on the bare bones of this conclusion, we sketch the scenarios that in our judgment suffice to leave open the possibility that the appellants may yet be found guilty of conspiracy to defraud the IRS without doing violence to their earlier acquittals on drug-related charges. In the course of this exercise, we treat Smith and Morris separately.

**1. *Smith's Collateral Estoppel Claim.*** The district court properly instructed the jury that the government must prove "the specific offense charged in the indictment," and, thus, that Smith had the specific intent to further the distribution or possession of marijuana. The record leaves room for at least one substantial possibility consistent with permitting Smith to be tried on the tax conspiracy charge.

The proof showed that Smith engaged in a variety of entrepreneurial ventures, including buying and selling coins, antiques, posters, prints, stamps, collectibles, and real estate. At trial, his own counsel described him as "a hustler." Smith conducted his affairs largely in cash and kept no records. Of particular pertinence for present purposes, he had close business connections with Gary Dethlefs, a central figure in the marijuana conspiracy.

Both the evidence and the jury's verdict are consistent with a finding that Dethlefs made enormous profits buying and selling marijuana. Smith worked as the general manager of G & A Development Corporation, a construction company owned by Dethlefs. Smith had direct responsibility for the firm's land acquisitions. He also teamed with Dethlefs to acquire restaurants, and he joined Dethlefs on at least one sojourn to Los Angeles in regard to a venture in the music recording industry.

In his trial testimony, Smith swore that his involvement with Dethlefs extended only to legitimate businesses and that he had no knowledge that Dethlefs' seemingly inexhaustible wealth came from drugs. He stated that he solicited Dethlefs to back his investments because Dethlefs "had money." Given the magnitude of Dethlefs' drug dealing and Smith's close ties with him, the jury certainly could have believed that marijuana trafficking kept Dethlefs' coffers full—and that Smith knew as much. The jury, however, also could have concluded that Smith was not involved in trafficking per se, but simply helped to launder the proceeds of Dethlefs'

---

**4.** This point is driven home by a reading of count 3 of the indictment, which discusses in detail the conspirators' actions to hide the income that flowed their way, alleging, for example, that Morris and Smith used marijuana-generated cash to renovate and improve real property (a specie of money laundering that is not mentioned in count 1).

In fairness, we also note that count 3 contains some allegations tending to blur the distinction between the marijuana conspiracy and the tax conspiracy. Thus, Count 3 accuses Morris and Smith of "earn[ing] income by acquiring, receiving, possessing, storing, repackaging, transporting, consigning, entrusting, and distributing marijuana, and fail[ing] to report such sums to the Internal Revenue Service." To the extent that

such evidence is probative of the appellants' participation in the tax conspiracy, the government is free to introduce it in a subsequent trial, despite the previous acquittal. *See Dowling,* 493 U.S. at 348, 110 S.Ct. at 672 (declining to extend the doctrine of collateral estoppel to require exclusion of relevant evidence "simply because it relates to alleged criminal conduct for which a defendant has been acquitted"). However, nothing in this opinion is intended to circumscribe the district court's discretion either in making *in limine* orders or in fashioning appropriate limiting instructions regarding how (if at all) evidence of the appellants' putative involvement in the marijuana conspiracy may now be used. *See Dray,* 901 F.2d at 1141.

operation.[5] Such a conclusion would be consistent with both an acquittal on count 1 and a subsequent conviction on count 3.

Of course, the record does not conclusively establish that Smith intended to defraud the United States, but that is not the issue today. What matters now is that, giving full effect to the jury's verdict, the record does not foreclose the scenario spelled out above. Moreover, though the line for determining whether theories explaining a jury's acquittal are too farfetched to be given weight in the collateral estoppel calculus is inherently tenebrous, that imprecision poses no problem where, as here, the proffered explanation is a plausible one. Much evidence in the record is consistent with both the jury's verdict and the appellants' participation in a conspiracy to defraud the IRS. Smith's collateral estoppel claim therefore founders.

**2. *Morris' Collateral Estoppel Claim.*** We are satisfied that Morris, too, failed to carry the burden of showing that his acquittal on the marijuana conspiracy charge necessarily decided his lack of involvement in the tax conspiracy. The record leaves open the realistic possibility of a jury finding that he did not intend to distribute marijuana.

Morris claims that he does construction work for a living. He frequently works "under the table"; he accepts payment in cash for services rendered and does not report the income. One witness testified that, between 1985 and 1992, he alone paid Morris $21,000 in cash for work done off the books.

William Hesketh cooperated with the prosecution and testified at the first trial. He admitted dealing drugs from 1985 through 1988. During that period he bought large quantities of marijuana (as much as 100 pounds at a time) from Dethlefs. He also testified that he both gave and sold marijuana to Morris (who worked for him on virtually a full-time basis in 1987 and 1988). Morris built a chimney for Hesketh, remodeled the upper story of Hesketh's home, and constructed two buildings for D and S Moulding Company (a business that Hesketh controlled). Hesketh always paid Morris in cash. While the verdict indicates that the jurors turned down the government's theory that Morris purchased marijuana from Hesketh for resale, they nonetheless could have inferred knowledge on Morris' part that Hesketh's money came from marijuana sales.

Thus, if the jury thought that Morris, though aware of the source of Hesketh's funds, had no stake in the success of the marijuana-purveying enterprise, it would be obliged to return a "not guilty" verdict on count 1 of the indictment as drawn—but that verdict would not tell us anything of consequence about Morris' guilt or innocence vis-à-vis the tax conspiracy. In all events, this scenario is sufficient (and sufficiently plausible) to overcome Morris' argument that collateral estoppel now prevents his trial on a charge of conspiracy to defraud the IRS.[6]

## IV.

### Conclusion

We need go no further. For the reasons we have discussed, neither double jeopardy nor collateral estoppel preclude the government from prosecuting the appellants on charges of conspiracy to defraud the United States in the determination and collection of income taxes. Consequently, the district court did not err in refusing to dismiss count 3 of the indictment.

*Affirmed.*

---

**5.** Smith's track record as a wheeler-dealer tends to fortify such a conclusion; the evidence introduced at the first trial showed that he had an entrepreneurial background in business and real estate which included other relevant experience in hiding income from the government.

**6.** If more were needed—and we do not think that it is—we note that only count 3 (the tax conspiracy charge), not count 1 (the marijuana conspiracy charge), alleges that Morris renovated and improved real and personal property with cash.