**UNITED STATES of America**

v.

**Robert F. CARROZZA,
et al., Defendants.**

**No. Crim.A. 97–40009–NMG.**

United States District Court,
D. Massachusetts.

July 9, 1999.

Steven M. Wise, Fraser & Wise, Boston, MA, for plaintiff.

C. Deborah Phillips, Karen A. Meyer, Nickless & Phillips, Fitchburg, MA, Carey H. Smith, Morrison, Mahoney & Miller, Worcester, MA, for defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Following a 55–day trial of nine defendants that resulted in a hung jury on most counts, defendants Vincent Marino ("Marino") and Anthony Ciampi ("Ciampi") moved this Court to dismiss several of the remaining counts on grounds of collateral estoppel (Docket Nos. 751 and 758). Moreover, Ciampi filed a motion, based on collateral estoppel, to preclude the government from presenting certain firearms evidence at the retrial (Docket No. 748). This Court denied those motions by endorsement on May 5, 1999 and both Marino and Ciampi have filed notices of appeal (Docket Nos. 857 and 860).

Pending before this Court is the government's Motion Regarding Defendants' Notice of Appeal (Docket No. 883). The government asks this Court 1) to certify that the motions of Marino and Ciampi to dismiss are frivolous and 2) to find that the denial of Ciampi's motion to preclude the introduction of firearms evidence cannot be immediately appealed because it is interlocutory. The government contends that such rulings are necessary in order for this Court to retain jurisdiction over the cases against Marino and Ciampi while the appeals are pending and therefore to allow the retrial of Marino, Ciampi and their five co-defendants to begin as scheduled on September 13, 1999.

## I. Motions of Marino and Ciampi to Dismiss

### A. Background

An indictment returned on April 4, 1997 charged Marino, Ciampi and their co-defendants with, *inter alia,* RICO Substantive, RICO Conspiracy and Conspiracy to Commit Murder in Aid of Racketeering while members or associates of the Patriarca Family of La Cosa Nostra. The pending motions to dismiss relate to four counts of the indictment and two related racketeering acts charged as predicate offenses under the RICO statute. This memorandum addresses first the reasons for this Court's denial of those motions and then the government's motion regarding the appeals.

Marino is charged in Count Three with conspiring to murder 14 individuals in violation of 18 U.S.C. § 1959. That conspiracy is also charged as Racketeering Act A–1 of Counts One and Two, the RICO counts.[1] Count Four charges Marino with use and carry of a firearm in connection with the Count Three conspiracy, in violation of 18 U.S.C. § 924(c). The jury acquitted Marino on Count Four but was unable to reach verdicts on Counts Three, Two or One. Marino argues that the Count Four acquittal, when combined with this Court's instruction to the jury pursuant to *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) (*"Pinkerton"*), requires the dismissal of Count Three and Racketeering Act A–1.

Count 30 and Racketeering Act B of Counts One and Two. charge both Marino and Ciampi with conspiracy to possess with intent to distribute, and distribution of, cocaine. Count 32 charges them both with use and carry of a firearm in connection with Count 30. The jury acquitted both defendants on Count 31. Ciampi argues that consideration of the *Pinkerton* instruction requires the dismissal of Count 30, a charge on which the jury did not reach a verdict, and Racketeering Act B. Because the government dismissed Count 30 as to Marino during the trial, Marino seeks only dismissal of Racketeering Act B.

This Court instructed the jury, in accordance with *Pinkerton,* that a member of a conspiracy is liable as a principal for any substantive offenses committed by a co-conspirator during and in furtherance of that conspiracy. Specifically, the jury was instructed with respect to Counts Three and Four that if it found Marino guilty of Count Three, it could additionally find him guilty of Count Four if it also determined that 1) another member of the conspiracy committed the crime charged in Count Four, 2) the crime charged in Count Four was committed during and in furtherance of the conspiracy, 3) the crime charged in Count Four was a reasonably foreseeable consequence of the conspiracy and 4) Marino was a member of the Count Three conspiracy at the time the crime charged in Count Four was committed. The same instruction was given with respect to Counts 30 and 31.[2] The jury was else-

1. Count One charges Marino with violating 18 U.S.C. § 1962(c) (RICO substantive) and Count Two charges him with violating 18 U.S.C. § 1962(d) (RICO conspiracy).

2. The specific instruction was as follows:

A member of a conspiracy who commits another crime during the existence or life of a conspiracy and commits that other crime in order to further or somehow advance the goals or objectives of the conspiracy may be found by you to be acting as the agent of the other members of the conspiracy. The illegal actions of that person in committing that other crime may be attributed to other individuals who are then members of the conspiracy and who are also charged with that substantive crime. Under certain conditions, therefore, a defendant may be found guilty of the other crime even though he or she did not participate directly in the acts constituting that offense.

If you find that the government has proven the defendant under consideration guilty of conspiracy as charged in Count Three of the Indictment, beyond a reasonable doubt, you may also find that defendant guilty of any substantive crimes alleged in Counts Four through Ten and Counts 12 through 18 with which he is charged, provided you find that the essential elements of those counts as defined in these instructions have been established beyond a reasonable doubt and, provided further, you also find that each of the following four elements have been proven beyond a reasonable doubt:

*One:* that the specific substantive offense at issue—of murder, attempted murder, or assault with a dangerous weapon in aid of racketeering, or of using or carrying a firearm during and in relation to a crime of violence, as described in any of the Counts Four through Ten and Counts 12 through 18 of the Indictment—was committed by a member of the conspiracy as detailed in Count Three of the Indictment;

*Two:* that the substantive crime was committed during the existence or life of and in furtherance of the goals or objectives of the conspiracy;

*Three:* that the substantive crime was a reasonably foreseeable consequence of the conspiracy—reasonably foreseeable to the defendant then under consideration; and

where instructed that although Marino was not charged in Count 30, it could nevertheless find him guilty of Count 31 provided that it first found that the government had proven all of the elements of Count 30 against him beyond a reasonable doubt.

## B.  Analysis

Marino, in his motion to dismiss, argues as follows with respect to Counts Three and Four and the *Pinkerton* instruction:

It was the government's theory at the first trial that in 1994, there was a conspiracy to kill the Salemme loyalists listed in Count three.  Joseph Cirame was shot, Richard Gillis was shot, Michael Prochilo was shot at, Richard Devlin and Joseph Souza were shot and died.  It would be completely implausible to suggest that the jury acquitted on Count Four because it found that no person used a firearm in connection with these crimes of violence, or that these shootings were not in furtherance of the conspiracy alleged in count three, or that these shootings were not reasonably foreseeable.  The only plausible explanations are either that the jury did not find that the defendant was a member of the conspiracy charged in count three or

that the jury did not find that the conspiracy alleged in count three existed. The problem for the government is that either one of these two failures of proof would be fatal to its reprosecution of count three, and the count three conspiracy alleged as a RICO predicate act.[3]

Marino contends that the jury's implicit findings (either that the Count Three conspiracy did not exist or that Marino was not a member of it) collaterally estop the government from further prosecuting him on Count Three and Racketeering Act A–1. He argues that this Court is therefore required to dismiss those charges.  Marino and Ciampi rely on the same argument with respect to Count 30 and Racketeering Act B.[4]

The government contends that Marino's reliance on *Pinkerton* is misplaced because the jury failed to reach verdicts on the underlying conspiracy charges.  In essence, the government argues that this Court instructed the jury not to consider *Pinkerton* liability unless it first determined that the defendant under consideration was guilty of the underlying conspiracy.  Because the jury did not reach a verdict on Count Three, it should not have considered the possibility of *Pinkerton* lia-

*Four:* that at the time that the substantive crime was committed, the defendant under consideration was a member of the conspiracy.

These same instructions apply to Counts 19 and 30 of the Indictment as well....

As to Count 30, if you find that the government has proven the defendant under consideration guilty beyond a reasonable doubt of conspiracy to distribute and possess with intent to distribute cocaine, as charged in Count Thirty of the Indictment, you may also find that defendant guilty of the crime alleged in Count 31, provided you find that the essential elements of Count 31 as defined in these instructions have been established beyond a reasonable doubt, and provided further you also find that each of the following four elements have been proven beyond a reasonable doubt:

*One:* that the substantive offense of using or carrying a firearm during and in relation to a drug trafficking crime as described in Count 31 of the Indictment, was committed

by a member of the conspiracy as detailed in Count 30 of the Indictment;

*Two:* that the substantive crime was committed during the existence or life of and in furtherance of the goals or objectives of the conspiracy;

*Three:* that the substantive crime was a reasonably foreseeable consequence of the conspiracy, that is, reasonably foreseeable to the defendant then under consideration; and

*Four:* that at the time that the substantive crime was committed, the defendant under consideration was a member of the drug trafficking conspiracy.  (Tr. at 45/149–152).

3.  Ciampi's motion to dismiss adopts Marino's arguments.

4.  For the sake of brevity, this Court will discuss only Counts Three and Four. The analysis, however, applies equally to Racketeering Act A–1 and the drug charges contained in Counts 30, 31 and Racketeering Act B.

bility on Count Four. Likewise, the failure to reach a decision on Count 30 precluded consideration of *Pinkerton* liability on Count 31. The government therefore argues that Marino cannot rely on *Pinkerton* to urge this Court to reason backwards and conclude that it should be barred from reprosecuting Marino on the underlying conspiracy charges. Furthermore, the government contends that the motions to dismiss are not only without merit but also frivolous.

Marino, in his opposition to the government's pending motion, counters that a diligent jury, knowing and understanding the *Pinkerton* instruction, would not have acquitted him on Count Four without reaching a verdict on Count Three unless it affirmatively determined that one of *Pinkerton*'s other requirements was not met. He contends that an acquittal on Count Four would have been inappropriate if a viable alternative theory of conviction remained possible. A non-verdict on Count Three, he argues, leaves open the possibility of *Pinkerton* liability on count Four. While a guilty verdict is necessary to trigger *Pinkerton*, a not guilty verdict is necessary to foreclose it. Marino concludes that the jury, in reaching a not guilty verdict on Count Four, must, therefore, have considered the four requirements for *Pinkerton* liability and rejected at least one.

■ Marino's thesis attributes to the jury an unrealistic degree of sophistication. Although this Court believes Marino's theory is logically sound, it is nevertheless contrary to this Court's jury charge. This Court instructed the jury, in essence, not to consider potential *Pinkerton* liability as to Marino on Count Four unless it first determined that Marino was guilty on Count Three. Because the jury did not reach a verdict on Count Three, this Court concludes that, in accordance with its instructions, the jury did not consider *Pinkerton*.

This Court acknowledges that its instructions might not have been as thorough as possible. Had Marino's analysis been called to its attention during the first trial, this Court may well have incorporated his logic into the instruction. To the extent that the Court's instruction was incomplete, Marino failed to make that specific objection at the appropriate time. *United States v. Nason*, 9 F.3d 155 (1st Cir.1993) (defendant's failure to object to jury instructions after the charge was given constitutes a waiver of any such objection).

■ It is well established as a matter of law that a court must presume that a jury diligently follows its instructions. *United States v. Owens*, 167 F.3d 739 (1st Cir. 1999) (citing *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)). This Court concludes that the jury did so in this case even though those instructions did not take into account a possible ramification of its *Pinkerton* charge in the event of a hung jury. Although Marino's position is logically sound, this Court will not attribute to the jury the "Law Review" level of sophistication attained by Marino and his counsel after the declaration of a mistrial, especially where such intellectual gymnastics were contrary to the Court's instructions to the jury.

Moreover, consideration of the verdicts the jury reached and failed to reach renders inescapable the conclusion that it merely followed this Court's instructions and did not ascend to that level of sophistication attributed to it by Marino. All nine defendants brought to trial were charged with the Count Three conspiracy. The jury acquitted the defendants Puopolo and DeCologero on that charge but failed to reach verdicts with respect to any of the other defendants. Had the jury determined that the Count Three conspiracy did not exist, it would have acquitted all of the defendants on that charge. Furthermore, had it determined that Marino was not a member of that conspiracy, it would have acquitted him. The jury's failure to reach a verdict with respect to Marino and six

other co-defendants conclusively refutes Marino's position that the jury must have determined either that the Count Three conspiracy did not exist or that Marino was not a member of it.

Furthermore, a "not guilty" verdict on Count Four is not inconsistent with the failure to reach a verdict on Count Three, nor would it have even been inconsistent with a guilty verdict on Count Three. This Court instructed the jury that to find a defendant guilty of a Section 924(c) crime, it must determine either that the defendant personally used or carried a firearm or aided and abetted another's use or carrying of a firearm. The jury was further instructed that aiding and abetting in a Section 924(c) context requires proof that the defendant knew to a practical certainty that someone else used or carried a firearm. *United States v. Spinney*, 65 F.3d 231, 238 (1st Cir.1995).

Although the jury was unable to reach a unanimous agreement on whether Marino was a member of the Count Three conspiracy, it could have concluded that, even if he were, he did not personally use or carry a firearm in connection with that crime nor did he aid and abet another in using or carrying a firearm. The Count Four acquittal is therefore entirely reconcilable with the failure to reach a verdict on Count Three.[5]

▮▮▮ This Court also notes that a defendant seeking to invoke collateral estoppel faces a heavy burden. The doctrine means simply that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In a criminal case, the defendant bears the burden of demonstrating that the issue he seeks to fore-

close was in fact settled in the first proceeding. *United States v. Morris*, 99 F.3d 476, 480 (1st Cir.1996). A court will collaterally estop the government from litigating an issue in a second trial:

> only [upon] an unequivocal showing that the issue sought to be foreclosed by the defendant from subsequent reconsideration was definitely, and necessarily decided by a jury in a final judgment, and in the defendant's favor.

*United States v. Aguilar–Aranceta*, 957 F.2d 18, 25 (1st Cir.1992).

Given that 1) the Court instructed the jury not to consider *Pinkerton* unless it first found the defendant then under consideration guilty of the underlying conspiracy, 2) Marino's analysis requires attributing to the jury an unrealistic degree of sophistication that, if applied, would have been contrary to the instructions of this Court and 3) the verdicts and non-verdicts of the jury are easily reconcilable, this Court concludes that Marino has failed to make the necessary showings to justify application of the doctrine of collateral estoppel.

This Court therefore reaffirms its denial of the motions of Marino and Ciampi to dismiss.

## C. The Government's Pending Motion Regarding Defendants' Notice of Appeal

The government moves this Court to declare that the motions of Marino and Ciampi to dismiss are frivolous and argues that such a declaration would allow this Court to retain jurisdiction over the cases against those defendants during the pendency of the appeal.

In *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Supreme Court held that the denial of a

---

**5.** The same analysis applies to Counts 30 and 31. Six defendants were tried on those counts. The government dismissed Count 30 as to Marino and defendant Romano during the trial and the jury acquitted DeCologero of that crime but failed to reach a verdict as to the other three defendants. With respect to Count 31, the jury acquitted five defendants but failed to reach a verdict as to Romano.

pretrial motion to dismiss based on double jeopardy grounds is appealable as a final decision under 28 U.S.C. § 1291. 431 U.S. at 659–662, 97 S.Ct. 2034. Because the doctrine of collateral estoppel is rooted in the Constitution's Double Jeopardy Clause, *Morris* 99 F.3d at 480, this Court's orders denying the subject motions to dismiss are immediately appealable. In general, the filing of a notice of appeal "divests a district court of authority to proceed with respect to any matter touching upon or involved in, the appeal." *United States v. Mala,* 7 F.3d 1058, 1061 (1st Cir.1993); *see Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). The government notes, however, that numerous circuits have recognized an exception to that rule in instances where a district court determines that the motion to dismiss is frivolous. *United States v. Dunbar,* 611 F.2d 985, 988 (5th Cir.1980) (*en banc*).[6]

■ Although this court finds that the motions of Marino and Ciampi to dismiss are lacking in merit, it cannot conclude that they are frivolous as a matter of law. The government's motion regarding the appeal of those motions must therefore be denied.

## II. Ciampi's Motion to Preclude Evidence

On May 5, 1999 this Court denied Ciampi's motion to preclude the government from relying upon any evidence of his alleged use of a machine gun and/or firearm equipped with a silencer or firearm muffler at the retrial. The jury acquitted Ciampi on Count 13 (use and carry of a firearm in connection with Count 12, the attempted murder of Joseph Cirame in aid of racketeering), Count 16 (attempted murder of

Stephen Rossetti in aid of racketeering) and Count 17 (use and carry of a firearm in connection with Count 16). The jury was unable to reach a verdict on Count Four with respect to Ciampi.

Ciampi contends that evidence regarding the alleged use of those firearms related to the counts for which Ciampi was acquitted. He argues that the facts relating to the alleged use of such firearms were necessarily decided in his favor and that therefore the government should be collaterally estopped from reintroducing such evidence in connection with Count Four at the retrial.

Although a defendant is generally entitled to an immediate appeal when a district court denies a motion presenting a collateral estoppel issue, several circuits have recognized an exception that applies to the facts of this case. In *United States v. Mock,* 604 F.2d 336 (5th Cir.1979), the Fifth Circuit Court of Appeals distinguished between collateral estoppel claims that seek to bar the introduction of particular evidence and those that seek to bar the re-prosecution of a particular count. The Court held that only the denial of the latter is an immediately appealable order under 28 U.S.C. § 1291. *Id.* Other courts have similarly held that evidentiary rulings involving collateral estoppel are interlocutory in nature and thus not immediately appealable. *United States v. Tom,* 787 F.2d 65, 69 (2nd Cir.1986); *United States v. Gulledge,* 739 F.2d 582, 586 (11th Cir. 1984); *United States v. Head,* 697 F.2d 1200, 1205; *United States v. Powell,* 632 F.2d 754, 758 (9th Cir.1980).

The distinction between the two kinds of collateral estoppel claims is apparent when one considers the rationale for allowing an immediate appeal of the denial of a motion

---

6. *See also, United States v. Farmer,* 923 F.2d 1557, 1565 (11th Cir.1991); *United States v. LaMere,* 951 F.2d 1106, 1108 (9th Cir.1991); *United States v. Salerno,* 868 F.2d 524, 540 (2nd Cir.1989); *United States v. Cannon,* 715 F.2d 1228, 1231 (7th Cir.1983); *United States v. Grabinski,* 674 F.2d 677, 679 (8th Cir. 1982); *United States v. Head,* 697 F.2d 1200, 1204 & nn. 3–5 (4th Cir.1982); *United States v. Hines,* 689 F.2d 934, 937 (10th Cir.1982); *United States v. Lanci,* 669 F.2d 391, 394 (6th Cir.1982); *United States v. Leppo,* 634 F.2d 101 (3rd Cir.1980).

to dismiss based on double jeopardy grounds. In *Abney*, the Supreme Court noted that "the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense." 431 U.S. at 660–61, 97 S.Ct. 2034. If a defendant is unable to appeal immediately the denial of a double jeopardy claim, the harm caused by having to endure a second trial will be incurable by the time the claim reaches an appellate court. *Id.* at 662, 97 S.Ct. 2034. A claim invoking collateral estoppel to bar the re-prosecution of a particular count implicates similar concerns.

On the other hand, the denial of a defendant's motion that seeks to preclude, on collateral estoppel grounds, the introduction of particular evidence can be fully reviewed after a second trial, just as any other evidentiary ruling can be redressed on appeal. *Mock*, 604 F.2d at 339. Moreover, an evidentiary issue does not carry with it the risk that a defendant will endure an improper second trial. Even if a defendant were to prevail on an immediate appeal of an evidentiary issue, he would still return to the district court for a trial. *Id.* at 340.

Although the First Circuit Court of Appeals has not yet addressed the issue, this Court is persuaded by the reasoning of the other Circuits. Ciampi's motion is an attempt to foreclose the government from presenting particular evidence. Based on such prevailing reasoning, this Court concludes that its denial of Ciampi's motion is not immediately appealable and that his appeal on that ground does not, therefore, divest this Court of jurisdiction over his case.

### ORDER

Because the motions of Marino and Ciampi to dismiss are not frivolous and because the denial of Ciampi's motion to preclude evidence is not subject to an interlocutory appeal (and thus the appeal of that motion does not divest this Court of

jurisdiction over Ciampi's case), it is hereby ordered that:

1) the Government's Motion Regarding Defendants' Notice of Appeal (Docket No. 883) is, with respect to the motions of Marino and Ciampi to dismiss, DENIED, and

2) the Government's Motion Regarding Defendants' Notice of Appeal (Docket No. 883) is, with respect to Ciampi's motion to preclude evidence, ALLOWED.

So ordered.