USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 99-1618
 UNITED STATES OF AMERICA,

 Appellee,

 v.

 VINCENT M. MARINO, a/k/a GIGI PORTALLA,

 Defendant, Appellant.

 
No. 99-1684

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 ANTHONY CIAMPI,

 Defendant, Appellant.

 
No. 99-1955

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 ROBERT F. CARROZZA, a/k/a BOBBY RUSSO,

 Defendant, Appellant.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Nathaniel M. Gorton, U.S. District Judge]

 

 Before

 Boudin, Circuit Judge,

 Cyr, Senior Circuit Judge,

 and Lynch, Circuit Judge.

 

 Robert L. Sheketoff, with whom Sheketoff & Homan were on brief for
appellant Marino.
 John H. LaChance for appellant Carrozza.
 Kern W. Cleven for appellant Ciampi.
 Cynthia A. Young, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for appellee.

 

 December 29, 1999
 CYR, Senior Circuit Judge. Anthony Ciampi, Robert
Carrozza, and Vincent Marino appeal from district court orders
which (i) rejected their motion to bar their retrial on certain
charges as to which the jury was unable to reach verdicts, and (ii)
rejected their collateral estoppel challenge to the introduction of
evidence relating to certain firearms. As their retrial was
imminent, we affirmed the district court orders following oral
argument and deferred the explanation for our decision until now.
 I
 BACKGROUND
 Appellants and twelve codefendants were indicted in April
1997 as alleged members or associates of organized crime, namely
the New England-based Patriarca Family, for their roles in various
offenses committed between June 1989 and December 1994. Counts 1
and 2 charged appellants with participating and conspiring to
participate in a pattern of racketeering activity in violation of
the Racketeer Influenced and Corrupt Organizations Act (RICO). See
18 U.S.C. 1962(c)-(d). Count 3 charged them with conspiracy to
murder fourteen individuals, including Joseph Cirame and Stephen
Rossetti, in aid of racketeering. See id. 1959; see also count
1 (Racketeering Act A-1). Count 4 charged them with using or
carrying firearms in connection with and furtherance of the murder
conspiracy alleged in count 3. See id. 924(c). The jury
acquitted Marino and Carrozza on count 4, but was unable to reach
verdicts as to appellants on counts 1, 2 and 3, or Ciampi on count
4. 
 Count 30 charged Ciampi with conspiring to distribute
narcotics, see 21 U.S.C. 846; see also count 1 (Racketeering Act
B), and count 31 charged Ciampi and Marino with using or carrying
a firearm in connection with the count 30 conspiracy to distribute
narcotics, see 18 U.S.C. 924(c). Although the jury deadlocked on
count 30, it acquitted Ciampi and Marino on count 31.
 Finally, Ciampi was charged in counts 12 and 16,
respectively, with attempting to murder Joseph Cirame and Stephen
Rossetti, see 18 U.S.C. 1959, and in counts 13 and 17 with using
or carrying a firearm equipped with a silencer and a machine gun,
in connection with the attempted murders charged in counts 12 and
16. The jury acquitted Ciampi on counts 13, 16 and 17, but
deadlocked on count 12.
 Appellants Carrozza and Marino later moved to dismiss
count 3, and Ciampi and Marino moved to dismiss count 30, on the
ground that their retrial on these counts was barred by the Double
Jeopardy Clause because their acquittals on counts 4 and 31 were
based on an implicit jury finding that the conspiracies charged in
counts 3 and 30 did not exist, or, if they did exist, appellants
were not members. Ciampi submitted a separate motion in limine to
bar, at any retrial on count 4, all evidence of his use of a
firearm equipped with a silencer, or of a machine gun, as described
in counts 13 and 17, respectively, on the ground that his
acquittals on these counts must have been based on an implicit jury
finding that he neither used nor carried these particular weapons. 
The district court rejected their motions. United States v.
Carrozza, 59 F. Supp.2d 172 (D. Mass. 1999).
 We ordered these appeals expedited due to the imminence
of the scheduled retrial. Shortly thereafter we rejected the
appeals from the district court orders denying the motions to
dismiss, then dismissed the appeal from the denial of Ciampi's
motion in limine for lack of appellate jurisdiction, permitting the
retrial to proceed. We now explain our rulings.
 II
 DISCUSSION
A. The Motions to Dismiss
 Appellants argue that their retrial on count 3 is barred
because the jury acquittal on count 4 must have been based on a
finding that appellants were not members of the count 3
conspiracy. Their contention turns on the pertinent jury
instructions.
 First, the district court instructed the jury on the two
related standards of criminal liability to be applied should it
find that appellants directly participated in the use of a firearm: 
 To find the defendant under consideration
 guilty of [count 4], you must find either that
 he knowingly used, or aided and abetted
 another in using, a firearm, or that he
 knowingly carried, or aided and abetted
 another in carrying, a firearm. You do not
 need to find both. . . . To find the defendant
 under consideration guilty of aiding and
 abetting in this context . . . the government
 must prove beyond a reasonable doubt that that
 defendant knew to a practical certainty that
 one of the other individuals involved in
 committing the crime would be using or
 carrying a firearm." (Emphasis added.)

 Second, the court gave the Pinkerton instruction, see
Pinkerton v. United States, 328 U.S. 640 (1946), defining a third
and less direct standard of criminal liability, which was
applicable because count 3 was not a substantive offense, but a
conspiracy. Its instruction stated: "if [the jury were to find]
that the government ha[d] proven the defendant under consideration
guilty of conspiracy as charged in count 3 of the indictment," it
could then convict the defendant under consideration of count 4
even if that defendant did not directly use the gun or aid and abet
another person in its use, provided the jury also determined that
the government had proven four factors beyond a reasonable doubt:
(1) some member of the count 3 conspiracy (other than the defendant
under consideration) used or carried the firearm; (2) defendant's
coconspirator used the gun "during the existence or life of and in
furtherance of the goals or objectives of the conspiracy"; (3) the
coconspirator's use of that firearm was "a reasonably foreseeable
consequence of the conspiracy to the defendant," and (4) the
coconspirator's use of the firearm occurred "at the time that . .
. the defendant . . . was a member of the conspiracy." 
 Finally, in an ad hoc supplement to its jury charge, the
district court instructed:
 Now, I will ask you to look once again briefly
 at the forms at the verdict forms that you
 will be using. First, with respect to the
 form for Mr. Carrozza, you will see that the
 first page, as to count 4, "Use or Carry
 Firearm in count 3." You will not you will
 find Mr. Carrozza guilty or not guilty [on
 count 4] only if you find first that Mr.
 Carrozza is a member of the conspiracy to
 murder and in aid of racketeering in count 3. 
 In other words, you look at that one first. 
 If you find him guilty or not guilty [on count
 3], you go on to count 4. You then consider
 count 4 in its entirety, taking into account
 everything I've said in my instructions, and
 determine whether or not he is guilty of
 carrying using or using a firearm.

 Under the collateral-estoppel element in the Double
Jeopardy Clause, the government may not relitigate at a second
trial an issue of ultimate fact previously determined by a valid
and final judgment. See Ashe v. Swenson, 397 U.S. 436, 443 (1970). 
When a jury reaches a general verdict of acquittal on certain
counts, therefore, the defendant may argue that the jury must have
based its acquittal on certain factual findings favorable to him,
and that those findings bar any retrial on other counts upon which
he was not acquitted, since his conviction in the retrial
necessarily would depend on the jury at retrial reaching contrary
findings as to the same essential facts. See id. at 444.
 Appellants argue that the jury could have acquitted on
count 4 only if it found that the government failed to prove all
three standards of criminal liability: actual use, aiding and
abetting, and Pinkerton ("coconspirator") liability. Therefore,
appellants reason, in considering the Pinkerton standard the jury
must have found that at least one of four factors had not been
proven: (1) the existence of the count 3 conspiracy; (2)
defendant's coconspirator's use of the firearm "in furtherance" of
that conspiracy; (3) defendant's ability reasonably to foresee his
coconspirator's firearm use; or (4) defendant's membership in the
conspiracy at the time the firearm was used.
 Appellants point out that the government adduced
overwhelming evidence that the count 3 conspiracy involved plans to
murder fourteen persons, and that those persons were in fact fired
upon. Thus, they argue, no rational jury could have acquitted them
on count 4 due to the government's failure to prove factors two and
three, since the government's evidence compelled an inference that
the use of the firearm was both foreseeable and in furtherance of
the count 3 conspiracy as actually executed.
 Accordingly, appellants contend, the jury must have
acquitted on count 4 because it found that either (1) the count 3
conspiracy did not exist; or (2) appellants were not members of
that conspiracy. Thus, either of these factual findings would bar
their retrial on count 3 under the doctrine of collateral estoppel.
 The applicability of the collateral estoppel doctrine is
reviewed de novo, see United States v. Lanoue, 137 F.3d 656, 661
(1st Cir. 1998), by "'examin[ing] [the] record of [the] prior
proceeding, taking into account the pleadings, evidence, charge,
and other relevant matter[s], and conclud[ing] whether a rational
jury could have grounded its verdict upon an issue other than that
which the defendant seeks to foreclose from consideration.'" Ashe,
397 U.S. at 444 (citation omitted). Although appellants need not
meet "a standard of absolute certainty," and "[our] approach must
be pragmatic in order to prevent the rejection of a collateral
estoppel defense in every case in which the prior judgment was
based on a general verdict of acquittal," United States v. Morris,
99 F.3d 476, 481 (1st Cir. 1996), ultimately it is their burden to
prove "unequivocal[ly]" that the jury verdict on count 4
necessarily included an implicit factual finding that either the
count 3 conspiracy did not exist or appellants were not members.
United States v. Aguilar-Aranceta, 957 F.2d 18, 25 (1st Cir. 1992). 
 Appellants cannot carry their burden. Unlike the
relatively straightforward jury instructions in the cases cited by
appellants, see, e.g., United States v. Romeo, 114 F.3d 141 (9th
Cir. 1997), their jury charge contained considerable ambiguity. 
Moreover, since appellants did not object to the instructions
below, the latent ambiguities may not be challenged on appeal. See
United States v. Ellis, 168 F.3d 558, 561 (1st Cir. 1999). While
normally we presume juries follow their instructions, see United
States v. Awon, 135 F.3d 96, 103 (1st Cir. 1998), the more
tenebrous those instructions, the more difficult it may be for
defendants to demonstrate unequivocally on appeal that the jury
necessarily predicated its verdict on a particular finding. So it
is here, since we cannot determine with any reasonable degree of
reliability that the jury interpreted the pertinent aspects of its
charge in the manner asserted by appellants.
 The district court instructed the jury not to reach a
verdict on count 4 until it had reached a verdict on count 3:
"[Y]ou will find Mr. Carrozza guilty or not guilty [of count 4]
only if you find first that Mr. Carrozza is a member of the
conspiracy to murder and in aid of racketeering in count 3. In
other words, you look at [count 3] first. If you find him guilty
or not guilty, you go on to count 4." (Emphasis added.) Since
the jury found the defendant neither guilty nor not guilty on count
3, but deadlocked instead, we are left to divine an interpretation
of the charge which might explain its rationale.
 The government offers a plausible explanation: Since the
instruction that the jury not consider count 4 prior to count 3
 was given immediately after the Pinkerton instruction, the jury
may have understood (mistakenly) that the prohibition (against
considering count 4 before count 3) applied only to its
consideration of the Pinkerton criminal liability theory, not its
consideration of the earlier "direct" liability or "aiding and
abetting" theories. After deadlocking on count 3, however, the
jury may have proceeded to count 4 presuming that it need not
consider whether the government had proven Pinkerton coconspirator
liability and then determined that the government had not proven
either direct liability or aiding and abetting beyond a reasonable
doubt. In other words, the jury may have acquitted simply because
it found that a codefendant (i.e., not the defendant under
consideration) had used or carried the firearm, or because the
defendant under consideration had not known to a "practical
certainty" that a codefendant was using a gun. 
 Further, appellants not the government must bear the
burden of persuasion, see Morris, 99 F.3d at 480, by explaining in
a convincing manner why the jury if it did agree when it
acquitted on count 4 that the count 3 conspiracy did not exist 
did not then acquit on count 3. Instead, at best appellants simply
offer a plausible competing theory. See supra. But even though
"'[t]he mere possibility that the jury acted irrationally, without
more, will not negate the collateral estoppel effects of a prior
verdict if a rational interpretation of the verdict as a whole is
possible,'" Romeo, 114 F.3d at 144 (emphasis added; citation
omitted), appellants were confronted with "more": that is, the
government's plausible interpretation of the ambiguous jury
instructions and the apparent irrationality of the jury verdicts. 
Accordingly, since each collateral estoppel claim is to be
evaluated on its own peculiar facts, the idiosyncratic record in
the present case leads us to conclude that the district court
correctly denied the motion to dismiss.
 B. Motion in Limine
 Ciampi claims that the acquittals on count 13 (use of
handgun equipped with silencer, under count 12, in attempted murder
of Cirame) and count 17 (use of machine gun, under count 16, in
attempted murder of Stephen Rossetti) bar the government from
introducing evidence of Ciampi's use of those particular firearms
at any retrial on count 4, which charges him with using firearms to
further a conspiracy to murder fourteen persons, including Cirame
and Rossetti. As explained below, we lack jurisdiction to
entertain the Ciampi appeal.
 Unlike appellants' joint collateral-estoppel claim, see
supra Section II.A, not even a successful appeal from the denial of
Ciampi's motion in limine would preclude his retrial on count 4. 
Since count 4 alleges that Ciampi used firearms in connection with
a broader conspiracy, a successful appeal would merely restrict the
evidence the government could introduce on retrial. It would not
necessitate a dismissal of count 4.
 Normally, a double-jeopardy appeal is encompassed within
the Cohen exception to the final judgment rule precisely because,
absent an immediate appeal, the core relief conferred by the Double
Jeopardy Clause is irretrievably lost to the would-be appellant;
that is, insulation from the burdens of an improper retrial. See
Abney v. United States, 431 U.S. 651, 659-62 (1977). In contrast,
even if the Ciampi motion in limine had been granted by the
district court, a retrial on count 4 still would have been
necessary. Moreover, rulings on motions in limine normally are
considered provisional, in the sense that the trial court may
revisit its pretrial evidentiary rulings at retrial when an
evidentiary proffer may be more accurately assessed in the context
of the government's other evidence. See United States v. Smith, 46
F.3d 1223, 1233 (1st Cir. 1995). Thus, the Ciampi challenge is not
ripe for appellate review, nor will its postponement irretrievably
deprive him of any right protected by the Double Jeopardy Clause.
 Although other circuits are unanimous in holding, on
collateral estoppel grounds, that no immediate appeal will lie from
pretrial evidentiary rulings of this type, Ciampi contends that
First Circuit precedent is to the contrary. See United States v.
Royal, 174 F.3d 1, 9 (1st Cir. 1999) ("'[I]n a multipanel circuit,
newly constituted panels are, for the most part, bound by prior
panel decisions closely on point.'") (citation omitted). However,
the authorities relied on by Ciampi principally United States v.
DeVincent, 632 F.2d 155 (1st Cir. 1980) did not reach the
jurisdictional issue presented here.
 In DeVincent we simply pointed out that collateral
estoppel "is separate from the application of the Blockburger rule
or from the core concept of double jeopardy, as well as the
comparison of the statutory elements of the two crimes," in that
"[c]ollateral estoppel need not apply to a whole count but instead
can control a single element of a count or trial." United States
v. DeVincent, 632 F.2d 155, 160 (1st Cir. 1980). We did so only
after completing the Blockburger analysis, and before turning to
the distinct collateral-estoppel claim asserted by DeVincent. 
Although the quoted language was intended to contrast core double-
jeopardy claims with collateral-estoppel claims, both of which come
under the umbrella of the Double Jeopardy Clause, we did not
remotely suggest that all collateral-estoppel claims are alike for
all purposes, let alone imply that an interlocutory appeal would
lie in relation to any and all collateral-estoppel claims. Rather,
collateral-estoppel claims fall into two distinct categories: those
involving factual findings which will preclude retrial, and those
which merely delimit the scope of the government's evidence on
retrial. DeVincent, Morris, and Aguilar-Aranceta each involved the
former variety. Thus, adoption of the sound jurisdictional rule
endorsed by our sister circuits is not precluded under our
precedents.
 Finally, Ciampi suggests that since there can be no
question that we possess jurisdiction of the joint appeal from the
denial of appellants' motion to dismiss, see supra Section II.A,
the interests of judicial efficiency would be served were we to
invoke our pendant jurisdiction over Ciampi's interlocutory appeal
from the denial of his motion in limine. This approach is
foreclosed as well.
 In Swint v. Chambers County Commission, 514 U.S. 35
(1995), the Supreme Court placed severe constraints on the exercise
of this type of pendant jurisdiction. See id. at 44 n.2 (citing
Roque-Rodriguez v. Lema Moya, 926 F.2d 103, 105 n.2 (1st Cir.
1991)). Where appealable and nonappealable claims are not
"inextricably intertwined," "a rule loosely allowing pendant
appellate jurisdiction would encourage parties to parlay Cohen-type
collateral orders into multi-issue interlocutory appeal tickets." 
Id. at 49-50 (specifically noting that Abney found "special
considerations" justifying immediate appeals from core Double
Jeopardy claims). As the Ciampi appeal from the denial of the
motion in limine is not intertwined with appellants' joint appeal,
we discern no sound basis for exercising pendant jurisdiction.
 Accordingly, we affirm the district court order denying
appellants' motion to dismiss and dismiss the appeal from the
denial of Ciampi's motion in limine for want of appellate
jurisdiction. APPENDIX

 A member of a conspiracy who commits another crime
 during the existence or life of a conspiracy and commits
 another crime in order to further or somehow advance the
 goals or objectives of the conspiracy may be found by you
 to be acting as the agent of the other members of the
 conspiracy. The illegal actions of that person in
 committing that other crime may be attributed to other
 individuals who are then members of that conspiracy and
 who are also charged with that substantive crime. Under
 certain conditions, therefore, a defendant may be found
 guilty of the other crime even though he or she did not
 participate directly in the acts constituting the
 offense.
 If you find that the government has proven the
 defendant under consideration guilty of conspiracy as
 charged in count 3 of the indictment beyond a reasonable
 doubt, you may also find that defendant guilty of any
 substantive crimes alleged in counts 4 through 10 and
 counts 12 through 18, with which he is charged, provided
 you find that the essential elements of those counts as
 defined in these instructions have been established
 beyond a reasonable doubt and, provided further, you also
 find that each of the following four elements have [sic]
 been proven beyond a reasonable doubt:

 One, that the specific substantive
 offense at issue of murder,
 attempted murder, or assault with a
 dangerous weapon in aid of
 racketeering, or of using or
 carrying a firearm during and in
 relation to a crime of violence, as
 described in any of the counts 4
 through 10, and counts 12 through 18
 of the indictment, was committed by
 a member of the conspiracy as
 detailed in count 3 of the
 indictment;

 Two, that the substantive crime was
 committed during the existence or
 life of and in furtherance of the
 goals or objectives of the
 conspiracy;

 Three, that the substantive crime
 was a reasonably foreseeable
 consequence of the conspiracy 
 reasonably foreseeable to the
 defendant then under consideration;
 and

 Four, that at the time that the
 substantive crime was committed, the
 defendant under consideration was a
 member of the conspiracy.