USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1368 UNITED STATES, Appellee, v. LAWRENCE M. LANOUE, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Mary M. Lisi, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Godbold* and Cyr, Senior Circuit Judges. _____________________ _____________________ Scott A. Lutes, by appointment of the Court, for appellant. ______________ Margaret E. Curran, Assistant United States Attorney, with ___________________ whom Sheldon Whitehouse, United States Attorney, and James H. ___________________ _________ Leavey, Assistant United States Attorney, were on brief for ______ appellee. ____________________ March 2, 1998 ____________________  ____________________ * Of the Eleventh Circuit, sitting by designation. GODBOLD, Senior Circuit Judge. Lawrence Lanoue appeals GODBOLD, Senior Circuit Judge. ____________________ from a conviction of the unlawful possession of a firearm by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. 922(g)(1). He was convicted in the U.S. District Court for the District of Rhode Island after a trial by jury. He raises multiple issues including 1)improper venue, 2)double jeopardy, 3)collateral estoppel, 4)the right to have the attorney of his choosing, and 5)vindictive prosecution. We have reviewed each assertion and affirm his conviction. I. Factual Background and Procedural History I. Factual Background and Procedural History A. Lanoue's 1994 prosecution Lanoue was prosecuted in the District of Rhode Island in 1994 for various crimes arising from the events that also gave rise to the present prosecution. Evidence presented at Lanoue's 1994 trial demonstrated the following facts. On the morning of December 23, 1993, Lanoue left his residence in Rhode Island and traveled to Bellingham, Massachusetts. On the way he rendezvoused with Albert Cole, and they proceeded to Bellingham in a car that had been reported stolen. These movements were the subject of a large scale surveillance operation that included at least three dozen FBI agents and members of the Rhode Island State Police. Lanoue was arrested in Bellingham in a shopping center parking lot as he approached an unmarked armored car. -2- During the arrest Lanoue admitted to the arresting agents that he was carrying a .38 caliber handgun on his person. As a result of that arrest Lanoue and two codefendants, Cole and Patrick Meade, were charged in a seven-count indictment by a grand jury sitting in the District of Rhode Island. All three were charged in Count I with conspiracy to commit federal offenses, 18 U.S.C. 371; in Count II with conspiracy to interfere with commerce by robbery, Hobbs Act, 18 U.S.C. 1951; in Count III with attempt to interfere with commerce by robbery, Hobbs Act, 18 U.S.C. 1951; and in Count IV with using and carrying a firearm during and in relation to an attempt or conspiracy to commit robbery, 18 U.S.C. 924(c)(1). Count V charged Lanoue and Cole with interstate transportation of a stolen motor vehicle, 18 U.S.C. 2312; Count VI charged Lanoue and Meade with possessing firearms and ammunition in and affecting commerce, each having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, 18 U.S.C. 922(g)(1)(2); and Count VII charged Lanoue alone with interstate transportation of a firearm with an obliterated serial number, 18 U.S.C. 922(k). Counts III, IV and V also explicitly charged the defendants with aiding and abetting. 18 U.S.C. 2. Count VI was dismissed by the government because the defendants had been arrested in Massachusetts rather than Rhode Island and prosecutors anticipated problems with venue. A -3- redacted indictment was filed with leave of court on August 17, 1994 that designated the original Count VII as Count VI.  The jury convicted Lanoue of Counts I, V and VI and acquitted him of the robbery-related charges of Counts II, III, and IV. His codefendants Cole and Meade were acquitted of all charges. The court sentenced Lanoue to 175 months in prison. Lanoue appealed to this court, and it reversed his convictions on Counts I and VI after finding that the government had failed to disclose a taped conversation between Lanoue and a key witness, James Carron, in violation of Fed. R. Crim. P. 16(a)(1)(A) and the pre-trial discovery order. See U.S. v. ___ ____ Lanoue, 71 F.3d 966 (1st Cir. 1995). ______ Following this reversal plea negotiations between the parties failed, and the government decided not to retry Lanoue for the same crimes. Instead, another District of Rhode Island grand jury returned a one-count indictment against Lanoue charging him with the 922(g)(1) unlawful possession of a firearm charge that had been dismissed from the original indictment. Conviction under 922(g)(1) carries a minimum 15- year mandatory sentence.  At Lanoue's second trial the jury returned a verdict of guilty on the sole count. Lanoue was then sentenced to a 235- month prison term.  II. Discussion II. Discussion A. Venue -4- Lanoue moved to dismiss the firearm possession charge for lack of venue and for a judgment of acquittal on grounds of improper venue. The district court denied both motions. Lanoue admits that the evidence proved that he possessed the firearm in Massachusetts but denies that the crime also occurred in Rhode Island where he was tried.  A defendant in a criminal case has a constitutional right to be tried in a proper venue. See U.S. v. Johnson, 323 ___ ____ _______ U.S. 273, 275 (1944)(noting that two constitutional provisions, Article III, 2, cl. 3 and the Sixth Amendment both provide a right to trial in the state where the crime is committed); U.S. ____ v. Uribe, 890 F.2d 554, 558 (1st Cir. 1989); see also Fed. R. _____ ________ Crim. P. 18 (codifying the constitutional guarantee by requiring prosecution in the district where the offense was committed). The government bears the burden of proof on the issue of venue. Venue is not an element of the offense, and it must be proven only by a preponderance of the evidence. U.S. v. Georgacarakos, ____ _____________ 988 F.2d 1289, 1293 (1st Cir. 1993). We review whether venue was proper in the light most favorable to the government and the jury's verdict to determine whether the prosecution met its burden. U.S. v. Joselyn, 99 F.3d 1182, 1190 (1st Cir. 1996), ____ _______ cert. denied, Billmyer v. U.S., 117 S. Ct. 959 (1997).  ____________ ________ ____ We must look to the statute defining the crime to determine the location of the crime for the purpose of venue. If the statute "does not indicate a method for determining the location of the crime, . . . the location must be determined from -5- the nature of the crimes alleged and the location of the act or acts constituting it." Georgacarakos, 988 F.2d at 1293 (internal _____________ quotation marks and citations omitted). Where the crime is a continuing crime and is "committed in more than one district, [it] may be . . . prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C.  3237(a). To determine the locations of the continuing crime we must look to the key verbs of the statute in question. Georgacarakos, 988 F.2d at 1293. 18 U.S.C. 922(g) makes it _____________ unlawful for a convicted felon to "possess in or affecting commerce, any firearm." Only where Lanoue actually possessed a firearm would venue be proper. The government offered evidence to show that Lanoue possessed the firearm in Rhode Island. First, the government offered the testimony of Lanoue from his first trial admitting that the firearm, a .38 caliber handgun, belonged to him, which indicates that he carried it from his home in Rhode Island to Massachusetts where he was arrested. Second, the government offered the testimony of an FBI surveillance pilot who observed Lanoue in Rhode Island with a firearm on the day in question. Third, evidence found at Lanoue's residence in Rhode Island included a gun cleaning kit used to clean a .38 caliber handgun. This evidence was sufficient that a jury could have found by a preponderance of the evidence that Lanoue did knowingly possess a firearm in Rhode Island. Venue was appropriate in Rhode Island -6- under 18 U.S.C. 922(g)(1), and the district court did not err in denying Lanoue's venue motions. B. Double Jeopardy Lanoue contends that his prosecution under 18 U.S.C. 922(g)(1) violated the Fifth Amendment's prohibition against double jeopardy. We exercise de novo review of constitutional questions "such as the district court's denial of a motion to dismiss . . . on the grounds of double jeopardy and collateral estoppel." U.S. v. Aguilar-Aranceta, 957 F.2d 18, 21 (1st Cir. ____ ________________ 1992). For double jeopardy to attach a defendant must be tried for the same offense twice. Offenses are not the same if they each "require[] proof of [an additional] fact which the other does not." Blockburger v. U.S., 284 U.S. 299, 304 (1932). ___________ ____ The Blockburger test looks to the elements of each offense rather ___________ than to the evidence used to prove these elements. See U.S. v. ___ ____ Morris, 99 F.3d 476, 479 (1st Cir. 1996).  ______ Section 922(g)(1) requires the government to prove that Lanoue (1) was previously convicted of a crime punishable by an imprisonment term in excess of one year and (2) knowingly possessed a firearm (3) in or affecting commerce. U.S. v. Lewis, ____ _____ 40 F.3d 1325, 1342 (1st Cir. 1994). The essence of Lanoue's contention is that his earlier prosecution under 18 U.S.C.  922(k) for transporting a weapon with an obliterated serial number and under 18 U.S.C. 371 for conspiracy made the current prosecution under 18 U.S.C. 922(g)(1) duplicative. He does not -7- claim that either of these offenses alone requires proof of the same elements as 922(g)(1) but that his prosecution for these two offenses in conjunction created the basis for double jeopardy. Lanoue asserts that because the prosecution offered evidence of each element of 922(g)(1) during his first trial, either in proving the conspiracy charge or in proving the obliterated serial number charge, it should be barred from now prosecuting him under 922(g)(1).  Lanoue ignores that each offense must be considered separately. The offense of obliterating a serial number is not the same as possession of a firearm by a convicted felon; each offense requires an element of proof that the other does not. The former requires that the serial number of the gun be removed, and the latter requires a previous conviction for a crime punishable by imprisonment for more than one year. Furthermore, although the conspiracy charge listed firearm possession as an overt act of the conspiracy,1 a conspiracy to commit a crime is not the same offense as the substantive crime for double jeopardy purposes. See U.S. v. Felix, 503 U.S. 378, 390-91 (1992). ___ ____ _____ In short, it does not matter that the prosecutors presented the same evidence at the first trial and at the second where he was being tried for separate offenses. His contention  ____________________ Count I of the original indictment charged the defendants with conspiracy to commit six different underlying federal offenses. One of these was transporting firearms possessed by convicted felons. The jury was instructed that it could find the defendants guilty of the charge alleged in Count I if it found them guilty of any one of the underlying overt acts.  -8- comes very close to advocating the "same conduct" test that was briefly adopted by the Supreme Court in Grady v. Corbin, 495 U.S. _____ ______ 508, 521 (1990), but later rejected in U.S. v. Dixon, 509 U.S. ____ _____ 688, 712 (1994) (overruling Grady and readopting the Blockburger _____ ___________ "same elements" test for double jeopardy). See also Morris, 99 _________ ______ F.3d at 479-480 ("[P]erformance of a Blockburger analysis ___________ completes the judicial task in a successive prosecution case. Consequently, the appellants' 'same evidence' argument fails.") (citation omitted). Because the charged offenses are not the same under the Blockburger test, Lanoue's Fifth Amendment double ___________ jeopardy rights were not violated. C. Collateral Estoppel As an alternative to his double jeopardy assertion Lanoue contends that the government was collaterally estopped from prosecuting him for the firearm possession charge. Although the doctrine of collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy," Ashe v. Swenson, ____ _______ 397 U.S. 436, 445 (1970), a prosecution permissible under the Double Jeopardy Clause may be proscribed under the collateral estoppel doctrine where a previous acquittal bars the litigation of facts essential to the government's case. See Dixon, 509 U.S. ___ _____ at 710-11 n.15.  Specifically, collateral estoppel requires that an issue of ultimate fact has been determined in the defendant's favor in a prior prosecution between the same parties. See Ashe ___ ____ 397 U.S. at 443; U.S. v. Dray, 901 F.2d 1132, 1136 (1st Cir. ____ ____ -9- 1990). "Where it is impossible to determine whether the particular issue was previously resolved in a defendant's favor, preclusive effect must be denied." Aguilar-Aranceta, 957 F.2d at ________________ 23. The burden of demonstrating that the issue was actually decided in the first prosecution rests upon the defendant. Id.  __ The doctrine necessarily requires that the defendant was acquitted of at least some charge in the first prosecution before we can find that an issue was decided in his favor that might preclude the current prosecution. Lanoue was acquitted of three charges in his first prosecution and convicted of three others.2 Of the charges on which Lanoue was acquitted only one has any relation to the issues presented in the present prosecution. Count IV charged Lanoue with using and carrying a firearm during and in relation to an attempt or conspiracy to commit robbery. The jury could have acquitted Lanoue of this charge for several reasons. Only if it acquitted Lanoue because it found that he did not use or carry a firearm would the acquittal operate to collaterally estop the present prosecution. However, it is much more likely that the jury acquitted Lanoue of Count IV because it found that there was no attempt to commit robbery rather than because he carried no firearm. Lanoue's conviction on Count VI, which charged him with interstate  ____________________ Lanoue's convictions on Counts I and VI were later vacated by this court. U.S. v. Lanoue, 71 F.3d 966 (1st Cir. 1995). The ____ ______ reversal stemmed from the government's violation of its discovery obligations. The convictions were vacated with the intent that Lanoue would be retried. Id. at 984. Therefore, this court's __ previous decision is not an acquittal and does not suggest that any issue of fact was resolved in Lanoue's favor. -10- transportation of a firearm with an obliterated serial number, establishes that the jury found that Lanoue did in fact carry a firearm. Lanoue has failed to demonstrate that any ultimate issue of fact was determined in his favor during his first trial that would preclude the present prosecution. The district court did not err in denying Lanoue's collateral estoppel motion. D. Disqualification of Lanoue's counsel Lanoue contends that his conviction should be reversed because he was denied the counsel of his choice in violation of his Sixth Amendment rights. The Sixth Amendment right to counsel includes the right to have an attorney of one's own choosing; however, this right is not absolute. See U.S. v. Wheat, 486 U.S. ___ ____ _____ 153, 159 (1988). The court disqualified Lanoue's original attorney, Thomas Briody, on the government's motion and after a hearing on the issue. The reason for the disqualification was that Briody had represented Lanoue's codefendant, Cole, during the first trial. Cole was acquitted of all charges. The government told the district court that it might call Cole as a witness to testify on whether Lanoue possessed a firearm on December 23, 1993 and that a conflict of interest could arise if Briody had to cross-examine Cole. Both Cole and Briody waived any right to conflict-free representation, and Cole submitted an affidavit that he did not know that Lanoue possessed a firearm on the day of his arrest and had no knowledge concerning whether -11- Lanoue possessed a firearm at any time prior to his arrest. The government offered no reason, other than the possibility that Cole might have known of the firearm, for calling him as a witness. We review decisions to disqualify an attorney for conflict of interest for abuse of discretion. Fiandaca v. ________ Cunningham, 827 F.2d 825, 828 (1st Cir. 1987). A district court __________ can disqualify a defendant's attorney over that defendant's objection where it finds either an actual conflict or a serious potential conflict. In Re: Grand Jury Proceedings, 859 F.2d _______________________________ 1021, 1023-24 (1st Cir. 1988). The government cites numerous cases for the proposition that an attorney's representation of a client who may be called as a witness creates a serious potential for conflict, but many of these cases presented a greater potential for conflict than this case. See Wheat, 486 U.S. at 163-64 ("Here the District ___ _____ Court was confronted not simply with an attorney who wished to represent two coequal defendants in a straightforward criminal prosecution; rather, Iredale proposed to defend three conspirators of varying stature in a complex drug distribution scheme"); U.S. v. Voight, 89 F.3d 1050, 1078-79 (3d Cir.) ____ ______ (disqualification affirmed, but the attorney had represented several codefendants who continued to be involved in the case, one of whom refused to waive her rights), cert. denied, 117 S. ____________ Ct. 623 (1996); U.S. v. McCutcheon, 86 F.3d 187, 189 (11th Cir. ____ __________ 1996) (disqualification affirmed where codefendant refused to -12- waive any rights); U.S. v. Ross, 33 F.3d 1507, 1523 (11th Cir. ____ ____ 1994) (earlier client did not waive any rights); U.S. v. ____ Locascio, 6 F.3d 924, 932 (2d Cir. 1993) (possibility existed ________ that attorneys were accomplices in the crime, would themselves be called as witnesses, and that they had been inside counsel for entire Gambino crime family, of which the defendants were members); but see In re Grand Jury Proceedings, 859 F.2d at 1024- ___ ___ ____________________________ 26 (disqualification reversed where both the present client and the past client waived any right to conflict-free representation and court found no direct link between clients).  Although the facts of this case may well reach the outer limits of "potential conflict," the potential for conflict is a matter that is uniquely factual and presents a special dilemma for trial courts. If the attorney is allowed to continue and the conflict does arise then the defendant may not receive the representation to which he is entitled, resulting in an ineffective assistance of counsel appeal. The Supreme Court has recognized the "willingness of Courts of Appeals to entertain ineffective[] assistance claims from defendants who have specifically waived the right to conflict-free counsel." Wheat _____ 486 U.S. at 162. This dilemma creates the need for district courts to carefully consider the facts when deciding whether to disqualify. The district court in this case did not make the decision to disqualify summarily. It held a hearing and allowed each side to present its arguments for and against -13- disqualification. Other district courts might have reached . . . opposite conclusions with equal justification, but that does not mean that one conclusion was 'right' and the other 'wrong . . . . The evaluation of the facts . . . of each case under this standard must be left primarily to the informed judgment of the trial court." Id. at 164. The district court did not abuse its __ considerable discretion in disqualifying Lanoue's attorney in the face of a potential conflict of interest. E. Vindictive Prosecution Lanoue's most troubling assertion on appeal is that his prosecution under 922(g)(1) resulted from a vindictive motive on the part of Assistant United States Attorney James Leavey. Leavey has prosecuted Lanoue on at least two other occasions before this trial.3 The first resulted in an acquittal. Out of the six counts prosecuted in the second trial Lanoue was acquitted of three and convicted of three. On appeal this court reversed two of Lanoue's convictions after it found that Leavey had withheld evidence and violated his discovery obligations. See Lanoue, 71 F.3d at 984. Leavey decided not to retry Lanoue on ___ ______ those charges, instead prosecuting him on the 922(g)(1) charge, which he had previously decided to dismiss for lack of venue. A conviction under 922(g) carries a minimum sentence of 15 years. Lanoue is already serving a 19-year state sentence for violation of probation and a five-year federal sentence for his remaining  ____________________ Leavey conceded that actually he may have been connected to a fourth prosecution of Lanoue when he was Assistant Attorney General for the State of Rhode Island in the late 1970s. -14- conviction in the second prosecution. He is 75 years old and suffers from angina pectoris. The 235-month sentence he received in his second trial is substantially longer than the 175-month sentence he received in his first trial, which was reversed on appeal. A vindictive prosecution, if proved, violates a defendant's Fifth Amendment right to due process. See U.S. v. ___ ____ Goodwin, 457 U.S. 368, 372 (1982). We will reverse a conviction _______ that is the result of a vindictive prosecution where the facts show an actual vindictiveness or a sufficient likelihood of vindictiveness to warrant such a presumption. See id. at 373; ___ __ U.S. v. Marrapese, 826 F.2d 145, 147 (1st Cir. 1987). If the ____ _________ defendant creates a presumption of vindictiveness the burden shifts to the government to show that legitimate reasons exist for the prosecution. See Goodwin, 457 U.S. at 376 n.8.  ___ _______ Successful assertions of vindictive prosecution are most common where a defendant advances some procedural or constitutional right and is then punished for doing so. See ___ Blackledge v. Perry, 417 U.S. 21, 28-9 (1974) (Prosecutor __________ _____ impermissibly obtained a felony indictment resulting in a five to seven-year sentence after the defendant had received a six-month sentence for an assault and had exercised an absolute right of appeal and to trial de novo allowed under North Carolina law.); but see Bordenkircher v. Hayes, 434 U.S. 357, 365 (1978) (no ___ ___ _____________ _____ finding of vindictive motive where prosecutor followed through on -15- a pretrial threat to increase charges if defendant did not plead guilty). Lanoue successfully appealed his first conviction and sentence, and he refused to plead guilty to the counts reversed in the first appeal even though the prosecutor warned that this refusal might result in a reinstatement of the 922(g)(1) charge that had been dismissed from the original indictment.4 The prosecutor sought an indictment for the 922(g)(1) charge based upon the conduct that was the subject of the original indictment. This one additional charge carried a mandatory minimum sentence that was larger than the original sentence he received after being convicted of three separate offenses in the first trial. We hold that Lanoue did not show prosecutorial vindictiveness, or a likelihood of vindictiveness sufficient to create a presumption and shift the burden to the government. The fact that the government followed through on a threat it made during plea bargain negotiations does not, by itself, constitute prosecutorial misconduct. See Bordenkircher, 434 U.S. at 365. ___ _____________ Furthermore, even if Lanoue had raised a presumption of  ____________________ During plea negotiations the government offered Lanoue a chance to plead guilty to the charges that this court reversed, promising him a maximum ten-year sentence to run concurrently with the five-year sentence he is presently serving. Because Lanoue is serving the five-year federal sentence concurrently with the 19-year state sentence, this offer subjected him to no additional jail time unless his state sentence was shortened to less than ten years. Lanoue rejected this offer insisting on a five-year concurrent sentence for the reversed charges. The government warned Lanoue that if he did not accept their offer they might prosecute him on the 15-year minimum, firearm possession charge. Lanoue rejected their offer and the prosecutor followed through on his threat. -16- vindictiveness, the government adequately rebutted this presumption by presenting sufficient reasons for bringing the belated 922(g)(1) charge.  We recognize that generally where a defendant can point to specific facts that raise a likelihood of vindictiveness a district court must grant an evidentiary hearing on the issue. See U.S. v. Adams, 870 F.2d 1140, 1146 (6th Cir. 1989) (where ___ ____ _____ criminal defendant presents evidence of vindictive prosecution, defendant is entitled to evidentiary hearing and discovery to permit her to develop defense); U.S. v. Napue, 834 F.2d 1311, ____ _____ 1329 (7th Cir. 1987)("to obtain an evidentiary hearing . . . a defendant must make a prima facie case based on facts sufficient to raise a reasonable doubt about the prosecutor's purpose") (internal quotations and citations omitted). After reviewing the record, we are satisfied that the district court held the equivalent of an evidentiary hearing. It heard Lanoue's counsel on the issue, and it allowed the government to proceed by proffer.5 The memorandum of each party was incorporated into the record of the case. After reviewing these memoranda, we find that they contain sufficient information that allowed the court to properly dismiss Lanoue's motion. In its memorandum the government candidly explained the reasons it prosecuted Lanoue under the firearm possession charge.  ____________________ The district court allowed the prosecutor's memorandum to be incorporated as a "substantive document of his actual testimony" explaining his reasons for the instant prosecution. Lanoue's counsel indicated that this arrangement was satisfactory as a means of establishing a factual record. -17- The most important reason offered by the prosecutor was that he had new evidence on the 922(g)(1) charge that was unavailable when he originally dismissed it. See U.S. v. Fiel, ___ ____ ____ 35 F.3d 997, 1008 (4th Cir. 1994) ("Where the change in the indictment is prompted 'by newly discovered evidence supporting the imposition of additional counts . . . a presumption of vindictiveness is not warranted.'") (quoting U.S. v. Bryant, 770 ____ ______ F.2d 1283, 1287 (5th Cir. 1985)). The 922(g)(1) charge was originally dismissed only because the government was concerned about venue. Lanoue's testimony at his first trial, in which he admitted to owning the firearm, made the issue of venue immaterial. The government initially did not prosecute Lanoue on the 922(g)(1) after it had the new evidence because Lanoue had been sentenced to 14 years, which it found to be a sufficient sentence for the crimes. It was not until that 14-year sentence was reduced on appeal that the government considered going forth with its new evidence. Second, the government explained that the 922(g)(1) charge was easy to prosecute. Faced with the choice of retrying the two charges reversed by this court, which were more factually complex and would require extensive proof,6 or trying Lanoue for the relatively simple to prove firearm charge,  ____________________ The convictions reversed by this court were for conspiracy to commit various federal offenses and interstate transportation of a stolen motor vehicle. Both of these crimes require the proof of several elements whereas 922(g)(1) only requires proof that Lanoue had previously been convicted of a felony, which he conceded, and that he possessed a firearm. Additionally, the government was concerned that it would be collaterally estopped from presenting some of the proof it offered in the first trial because Lanoue was aquitted of three of the original charges.  -18- it chose the latter. Third, the government gave Lanoue the option to avoid prosecution under 922(g)(1) and the 15-year mandatory sentence it requires. Lanoue refused this offer when he turned down the government's attempt to reach a plea agreement, knowing that a prosecution under 922(g)(1) might ensue. These reasons were presented to the district court in the government's memorandum and were made part of the record. They are sufficient to overcome Lanoue's evidence that tended to show vindictiveness or a presumption thereof. The district court did not err in refusing to dismiss the charge. III. Conclusion III. Conclusion We AFFIRM Lanoue's conviction of violating 18 U.S.C.  AFFIRM 922(g)(1). -19-