**UNITED STATES of America,
Plaintiff,**

v.

**Jose Manuel ZABALA–MARTI,
Defendant.**

**Civ. No. 07–318 (PG).**

United States District Court,
D. Puerto Rico.

March 17, 2009.

Frank D. Inserni–Milam, Frank D. Inserni Law Office, Maria H. Sandoval, Maria H. Sandoval Law Office, San Juan, PR, for Defendant.

Dina Avila–Jimenez, Mariana E. Bauza, United States Attorney's Office, District of Puerto Rico, San Juan, PR, for Plaintiff.

### OPINION AND ORDER

JUAN M. PÉREZ–GIMÉNEZ, District Judge.

On April 21, 2008, the government filed a motion requesting the Court schedule a hearing to determine whether a conflict of interest arose from Attorney Frank D. Inserni–Milam's ("Inserni") representation of defendant Jose Manuel Zabala–Marti ("Zabala–Marti"), in light of the possibility that Inserni may be called as a witness for the government. *See* Docket No. 696. After a hearing on this motion, Magistrate Judge Justo Arenas entered a Report and Recommendation ("R & R") (Docket No. 996) finding that Attorney Inserni had a conflict of interest and should be relieved from his legal representation of Zabala–Marti. On January 11, 2009, co-defendant Zabala–Marti filed an Objection to the Magistrate Judge's Report and Recommendation (Docket No. 1006), and the government filed a response thereto (Docket No. 1040).

Based on the following, the Court hereby **ADOPTS** the Magistrate's R & R and disqualifies Atty. Inserni from representing Zabala–Marti in the instant case.

### I.  BACKGROUND [1]

Zabala–Marti, along with forty-four other defendants, was charged with participating in a conspiracy to distribute narcotic controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 846, 860; a conspiracy to possess firearms in furtherance of drug-trafficking crimes in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(*o*); and aiding and abetting in the distribution of heroin, cocaine, marijuana, crack cocaine and narcotic controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 860 and 18 U.S.C. § 2. *See* Docket No. 2.

Before the return of this indictment, co-defendant Harry Smith Delgado–Cañuelas ("Delgado–Cañuelas" or "the cooperating defendant" or "the cooperator") began to cooperate with the government. On April 11, 2007, the cooperating defendant was housed at the 4–C unit at the Metropolitan Detention Center in Guaynabo. At the time, he was being represented by a Federal Public Defender. On December 7, 2007, a local attorney by the name of Ramon Delgado–Rodríguez ("Delgado–Rodríguez" or "Bronco") visited the cooperating defendant without the authorization of Delgado–Cañuelas's attorney. This meeting was audio-recorded. During said visit, Bronco wrote out a "sworn statement" and instructed Delgado–Cañuelas to sign and initial the document. *See* Docket No. 696 at page 2. The allegedly perjured sworn statement suggested that the cooperating defendant had never met several of the co-defendants in the case. Therefore, according to the government, the document contained materially false statements concerning the cooperating defendant's knowledge of the involvement of other co-defendants in this case. *Id.* The cooperator kept a carbon-copy of the statement, whereas

---

**1.**  Most of the facts in this section are taken     from the Magistrate Judge's R & R.

Delgado–Rodríguez kept the original. After the meeting, Delgado–Cañuelas turned over his copy to the F.B.I. *Id.*

On January 2, 2008, Delgado–Rodríguez visited Delgado–Cañuelas, once again without authorization from the cooperator's Federal Public Defender. This time, Delgado-Rodríguez asked Delgado–Cañuelas to sign another sworn statement prepared in Delgado–Rodríguez's handwriting. This second document contained substantially the same false information as the first one. The cooperator signed it, knowing that it was false. *Id.* Again, the cooperating defendant kept a carbon copy of the second "sworn statement" and turned it over to the F.B.I. after the meeting. Delgado–Rodríguez kept the original. *Id.* at 2–3.

Thereafter, on January 25, 2008, defendants Zabala–Marti and Ismel Velez–Lopez filed a Motion Requesting Order and an Ex Parte Sealed Supplemental Motion (Dockets No. 459–460) informing the Court that they had obtained two sworn statements wherein Delgado–Cañuelas declared that federal agents were aware of the fact that his testimony was false, fabricated and/or declared out of convenience. *See* Docket No. 460 at page 2.

On February 5, 2008, the government filed a superseding indictment including charges of conspiring to tamper a government witness and aiding and abetting to tamper and bribe a government witness in violation of 18 U.S.C. §§ 201(b)(2), 201(b)(3), 1512(b)(1), 1512(b)(2), 1512(k) [2]

**2.** Sections 201(b)(2)-(3) of Title 18 of the United States Code state as follows:
    (b) Whoever—
        (2) being a public official or person selected to be a public official, directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for:
        (A) being influenced in the performance of any official act;
        (B) being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or
        (C) being induced to do or omit to do any act in violation of the official duty of such official or person;
        (3) directly or indirectly, corruptly gives, offers, or promises anything of value to any person, or offers or promises such person to give anything of value to any other person or entity, with intent to influence the testimony under oath or affirmation of such first-mentioned person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or with intent to influence such person to absent himself therefrom;

Sections 1512(b)(1)-(2), (k) of the same title state as follows:
    (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
        (1) influence, delay, or prevent the testimony of any person in an official proceeding;
        (2) cause or induce any person to—
        (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
        (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
        (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
        (D) be absent from an official proceeding to which such person has been summoned by legal process; or
. . .
    (k) Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

against defendants Zabala–Marti, Cruz Roberto Ramos–Gonzalez, Jean Carlos Medina–Flores, Hector Laboy–Vega, Delgado–Rodríguez and Miguel Arroyo–Arroyo. *See* Docket No. 478. The object of the conspiracy stated in the indictment was to influence, delay or prevent co-defendant Delgado–Cañuelas from providing testimony adverse to one or more defendants in this case to federal officers or in any judicial proceeding, and to force the government to dismiss the indictment against one or more of the co-defendants in this case. *See id.* at pages 31, 42–43.

Subsequently, the government filed a motion requesting that this Court schedule a hearing prior to trial so that the Court had the opportunity to inquire as to whether or not a conflict of interest existed with regards to Inserni's legal representation of Zabala–Marti. *See* Docket No. 696. The government's concern was the preservation of Zabala–Marti's Sixth Amendment right to conflict-free representation in light of the fact that his legal counsel would be called as a government witnesses at trial. According to the government, Inserni's testimony would reveal relevant information in connection with the obstruction of justice and bribery charges, in particular, the circumstances under which he obtained the false affidavits. *See id.* at page 5.

The issue raised by the government was then referred to Magistrate Judge Justo Arenas, *see* Docket No. 781, who after holding a hearing and an in-chambers conference, issued a Report and Recommendation ("the Report" or "R & R") on January 7, 2009. *See* Docket No. 996. In the Report, Magistrate Arenas recommends that attorney Inserni be relieved from representing Zabala–Marti in the instant case. Before reaching this conclusion, the Magistrate Judge noted that attempts to reach an agreement by way of stipulated testi-

mony, or some remedy short of involuntary disqualification, failed. *See id.* at page 8.

On January 22, 2009, Zabala–Marti timely filed objections to the Report and Recommendation. *See* Docket No. 1006. Thereafter, on January 28, 2009, the Court unsealed the Report and Recommendation and Zabala–Marti's objections, and ordered the government to file a response to the Defendant's objections. *See* Docket No. 1014. Prior to the filing of the government's response, attorney Inserni filed a motion attaching a sworn declaration from his client. Therein, Zabala–Marti states that attorney Frank Inserni is his counsel of choice pursuant to his Sixth Amendment rights, and that he wanted Inserni to be allowed to continue to represent him despite this Court's finding that it might be prejudicial to his interests. *See* Docket No. 1032. Shortly thereafter, the government filed its response to Zabala–Marti's objections and motions. *See* Docket No. 1040.

In light of all these filings, the Court scheduled a hearing for February 25, 2009. *See* Docket No. 1044. The night before the hearing, attorney Inserni filed a "Proposal for Disposition of the Conflict of Interest Controversy" moving this Court to refer the issue back to Magistrate Judge Justo Arenas so that an "authentic" *Foster*[3] hearing could be held and so that Zabala–Marti, Bronco and the government could reach a stipulation agreement in lieu of Attorney Inserni's oral testimony. *See* Docket No. 1052. The government filed a response to Attorney Inserni's motion requesting that the Court deny counsel's "eleventh-hour attempt for a proposed disposition" that had already been rejected by Inserni before the R & R was issued. *See* Docket No. 1054.

---

**3.** *See United States v. Foster,* 469 F.2d 1 (1st     Cir.1972).

The hearing was held as scheduled in Zabala–Marti's presence, and the parties presented their arguments to the Court. The matter then stood submitted for this Court's *de novo* review.

## II. MAGISTRATE JUDGE'S FINDINGS IN REPORT AND RECOMMENDATION

The Magistrate Judge starts off his discussion in his Report and Recommendation stating that the situation that arises when an attorney is subpoenaed as a witness against his/her client immediately creates a conflict of interest. *See* Docket No. 996 at page 6. Magistrate Judge Arenas supported this conclusion in part by making reference to the ABA Model Code of Professional Responsibility, in particular Disciplinary Rule 5–102(B), which states that:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

MODEL CODE OF PROF'L RESPONSIBILITY DR 5–102(B). According to the Magistrate Judge, "a defense attorney being a witness for the prosecution can safely be assumed inherently prejudicial to the defendant he is representing." Docket No. 996 at page 7.

Magistrate Arenas also found that the government was neither trying to gain a tactical advantage in this case by conflicting out the defense attorney, or possessed an ulterior motive or reasoning beside its desire to prove the witness tampering and bribery charges against co-defendants, including Inserni's client. As per the Magistrate's findings, Mr. Inserni "unwittingly" became a critical link in the tampering chain and the government "understandably" wished to present the links in the

manner in which the false sworn statements traveled. *See id.* at page 9.

The Magistrate Judge also expressed concern with regards to co-defendant Zabala–Marti's lack of representation while his attorney-testified before the Court regarding elements of the charges against his client. The dangers of the impression this could make upon a jury, according to the Magistrate, could not be relieved by the appointment of an additional attorney to represent Zabala–Marti while his original attorney, namely, Mr. Inserni, was on the stand. *See id.* at page 9.

Consequently, the Magistrate Judge concluded that Mr. Inserni should be relieved from representing co-defendant Zabala–Marti after weighing the defendant's Sixth Amendment right to assistance of counsel against the government's obligation to prosecute fairly and adequately the inability of the defense to require the government to prove its case in a particular manner, and the strong interest of the courts in curtailing potentially abusive prosecutorial tactics. *See id.* at page 8.

## III. STANDARD OF REVIEW

■ The Court's standard of review for a Magistrate Judge's Report and Recommendation depends upon whether a party files objections. If a party does not object to the report and recommendation, the Court does not need to conduct a review by any standard, and a party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals. *See Santiago v. Canon, U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998); *United States v. Vega,* 678 F.2d 376, 379 (1st Cir.1982) ("There can be no appeal from a magistrate's report and recommendation unless objections are filed thereto.").

■ If a party does object to portions of the report and recommendation, the Court

reviews those portions *de novo.* *See Jasty v. Wright Medical Technology, Inc.*, 528 F.3d 28, 33 (1st Cir.2008). The Federal Rules of Civil Procedure dictate this standard of review in Rule 72(b), which states, in relevant part:

The district court to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, or any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED.R.CIV.P. 72(b). The relevant statute, 28 U.S.C. § 636(b)(1), provides that when a party objects to a magistrate judge's recommendation on a matter, the district court "shall make a de novo determination of ... [the] recommendation [ ]." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the ... recommendation [ ] made by the magistrate judge." *Id.* § 636(b)(1). And, in conducting its de novo review, the district court "may ... receive further evidence [on] the matter." *Id.* § 636(b)(1).

If the Court accepts a Report and Recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a de novo review of the record and adopts the Report and Recommendation. 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 3070.2 (2008).

## IV. APPLICABLE LAW AND ANALYSIS

### A. The Right to Conflict–Free Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const, amend. VI. "This right was designed to assure fairness in the adversary process." *Wheat v. United States,* 486 U.S. 153, 158, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (holding that district court's decision to disqualify attorney who wished to represent three conspirators in a complex criminal prosecution and to decline petitioner's waiver of his right to conflict-free counsel did not violate petitioner's Sixth Amendment rights). The Supreme Court of the United States has "held that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *U.S. v. Gonzalez–Lopez,* 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (*citing Wheat,* 486 U.S. at 159, 108 S.Ct. 1692).

▆ "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Gonzalez–Lopez,* 548 U.S. at 148, 126 S.Ct. 2557. Notwithstanding, although a criminal defendant's right to select and be represented by his or her preferred attorney is encompassed by the Sixth Amendment, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to secure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat,* 486 U.S. at 159, 108 S.Ct. 1692. In other words, "the Sixth Amendment right to counsel includes the right to have an attorney of one's own choosing; however, this right is not absolute." *U.S. v. Lanoue,* 137 F.3d 656 (1st Cir.1998) (*citing Wheat,* 486 U.S. at 159, 108 S.Ct. 1692) (affirming petitioner's conviction and hold-

**344**

ing district court did not abuse its considerable discretion in disqualifying petitioner's attorney for potential conflict after a hearing on the issue and despite petitioner's waiver of conflict).

■ "The Sixth Amendment's right to choose one's own counsel is circumscribed in several important respects." *Wheat,* 486 U.S. at 159, 108 S.Ct. 1692. In *Wheat,* the Supreme Court held "that the trial court has discretion to disallow a first choice of counsel that would create serious risk of conflict of interest." *Gonzalez–Lopez,* 548 U.S. at 148 n. 3, 126 S.Ct. 2557 (*citing Wheat,* 486 U.S. at 159, 108 S.Ct. 1692). That is because "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692. In fact, according to the Supreme Court, trial courts have an independent duty to investigate potential conflicts that "arises in part from the legitimate wish of district courts that their judgments remain intact on appeal." *Id.* at 161, 108 S.Ct. 1692.

■ After this investigation has taken place, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver [by the criminal defendant]" *Id.* at 162, 108 S.Ct. 1692.

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships be-

tween parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

*Id.* at 162–163, 108 S.Ct. 1692.

■ In addition, the Supreme Court has also held that district courts must be allowed substantial latitude in refusing waivers of conflicts even in cases "where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163, 108 S.Ct. 1692. Consequently, although a "District Court must recognize a presumption in favor of petitioner's counsel of choice, ... that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Id.* at 164, 108 S.Ct. 1692.

**B. Discussion**

**1. First Objection: Elements of Conspiracy and Best Evidence Test**

■ The first objection raised by Zabala–Marti to the R & R is that the Magistrate Judge incorrectly found that the government has "an unfettered right" to seat Mr. Inserni as a witness to prove the elements of the witness tampering or the bribing of a federal witness. According to the co-defendant, the only events Inserni could testify to occurred after the completion of the imputed crime, and thus, his testimony is unnecessary to the government's case. *See* Docket No. 1006. In response, the government argued that, on the contrary, Inserni's testimony was not only necessary, but critical to prove the object of the conspiracy set forth in the superseding indictment.[4]

---

4. As mentioned in the background section of this document, according to the superseding indictment, the object of the conspiracy was to influence, delay or prevent co-defendant

Delgado–Cañuelas from providing testimony adverse to one or more defendants in this case to federal officers or in any judicial proceeding and to force the government to dis-

In counts seven through nine of the superseding indictment, co-defendant Zabala–Marti was charged with violating statutes 18 U.S.C. §§ 201(b)(2), 201(b)(3), 1512(b)(1), 1512(b)(2) and 1512(k). *See* Docket No. 478. An element of the offenses charged is the intent to influence the testimony of a person *before a court or in any official proceeding.* Therefore, had Mr. Inserni not brought the false affidavits to the attention of this Court by filing them in the case's docket report, and element of the offense would be certainly missing.

Moreover, "to establish a conspiracy, the government must prove three elements: (1) an agreement to commit an unlawful act; (2) the defendant's knowledge of the agreement and voluntary participation in it; and (3) an overt act by at least one of the coconspirators in furtherance of the conspiracy." *U.S. v. Vazquez–Botet,* 532 F.3d 37, 61 (1st Cir.2008) (internal citations omitted). "The Government need not prove a formal agreement; instead, the agreement may be shown by a concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." *Id.* (internal citations and quotation marks omitted). Inserni's testimony will bear on the subject of a codefendant-conspirator's distribution of false affidavits to the attorneys appearing in the instant federal case with the sole object of obtaining the case's dismissal. That is, Inserni will testify as to an element the government must necessarily establish to prove the existence of a conspiration: an overt act by a co-conspirator of Inserni's client that was performed in furtherance of the conspiracy's goal. Accordingly, contrary to what Zabala–Marti suggests in his ob-

jection, this Court finds that Inserni's testimony at trial is at the crux of the government's case.

With regards to the governments right to seat Mr. Inserni as a witness, the government made reference in its response to the "best evidence test." *See* Docket No. 1040 at page 23. The "best evidence test" stands for the proposition that "the government need not resort to evidence other than defense counsel testimony if 'it means that the government must settle for less than its best evidence.'" *U.S. v. Diozzi,* 807 F.2d 10 (1st Cir.1986) (*citing United States v. Cortellesso,* 663 F.2d 361, 363 (1st Cir.1981)). In *Cortellesso,* the district court ordered defendant-petitioner's attorney's removal from the case as counsel for defendant because of the government's need to use him as a witness. Thereafter, the petitioner was convicted, and on appeal, contended that he was unconstitutionally denied counsel of choice. The First Circuit held that the government was not required to consent to the petitioner's request that his attorney not testify on an issue that was fundamental to the government's case, even if the evidence might have been obtainable from other, less-significant witnesses. *Id.*

> [Cortellesso's attorney] absence would have two consequences. Not only would it weaken the government's case directly by a serious diminution of the total evidence, it would create a singular question in the jurors' minds—how was it that [Cortellesso's attorney], the most significant witness, had not testified?

*Id.* Finally, the First Circuit noted in *Cortellesso* that had defense counsel been willing to enter into a stipulation of relevant facts, his testimony would not have been

miss the Indictment against one or more of the co-defendants in this case. *See* Docket

No. 478 at pages 31, 42–43.

needed, and he would have been free to continue in the case. *Id.* at 363–364.

Relying on the "best evidence test" set forth in *Cortellesso,* in *U.S. v. Diozzi,* 807 F.2d 10 (1st Cir.1986), the First Circuit Court of Appeals held that where adequate alternative methods of proof existed, the district court's pretrial disqualification of defense attorneys violated appellants' Sixth Amendment right to counsel of choice. Notwithstanding, contrary to *Cortellesso,* the appellants here had agreed to reach a stipulation of facts. In light of this fact, the Court in *Diozzi* concluded that it was "unable to find any basis for the government's claim that a stipulation would have been less than its best evidence." *Diozzi,* 807 F.2d at 13.

As noted by the Magistrate Judge in his Report, attempts to reach a stipulation of facts with regards to Inserni's testimony were unsuccessful.[5] Moreover, during the hearing, the Court asked the government if at this stage of the proceedings it was willing to reach a stipulation agreement with Zabala–Marti, and the government answered with an emphatic no. In addition, this Court is of the opinion that Mr. Inserni's oral testimony, much like in *Cortellesso,* is fundamental to the government's case and the best evidence available. Consequently, this Court finds that the government "[is] not required to accede to [the] truncation of its evidence." *Cortellesso,* 663 F.2d at 363.

### 3. Second Objection: Prejudicial Testimony

Zabala–Marti's second objection consists of one sentence: "The Report and Recom-

mendation erroneously presumes that Mr. Inserni's testimony will necessarily prejudice his client." *See* Docket No. 1006 at page 2. In response, the government raised this Court's attention to the conclusions the jury could reach with regards to Zabala–Marti's guilt or lack thereof from Mr. Inserni's credibility on the stand. *See* Docket No. 1040 at pages 26–27. Again, we agree.

In this Court's vast experience, we find that witnesses come "in all shapes and sizes." Mr. Inserni could potentially come across to the jury, among other things, as either too shaky or too aggressive or even evasive, neither of which would benefit his client. The inferences a juror could make about Zabala–Marti because of how his attorney behaves on the witness stand and thereafter are a risk no rational defendant should take. At any rate, this Court is unwilling to risk the effectiveness of Zabala–Marti's legal representation over his desire to have Mr. Inserni represent him at trial.

Moreover, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692. As suggested by the Magistrate Judge in his Report, in addition to constitutional considerations, the ethical standards embodied in the ABA Model Code of Professional Responsibility weigh against Inserni's continued representation of Zabala–Marti in this case. Citing the ABA Code of Professional Responsibility, among other references, the Court in *Cortellesso* found it improper for a defense

---

5. Nevertheless, it seems obvious to this Court that a stipulation would have never been obtained inasmuch as Inserni's testimony implicates not only his own client, but other co-defendants as well, who would have had to consent to the stipulation agreement, or alter-

natively, had the right to cross-examine Inserni during trial with regards to the content of the stipulation agreement. The latter situation would have made all efforts to reach a stipulation agreement and avoid a conflict of interest futile.

attorney to be called as a government witness.

If [Cortellesso's attorney] were to remain in the case, there were two alternatives: that he be called as a witness, or that he not be called. Clearly, the first alternative would have been **improper.** The grand jury record, which [Cortellesso's attorney] never disclaimed, showed that he would testify against his client on an issue fundamental to the government's case. This ... would create an impossible situation, the impropriety of which is well settled and requires no discussion.

*Cortellesso,* 663 F.2d at 363 (emphasis ours).

First of all, it can be safely assumed that when Inserni is seated as a government witness to testify as to an overt act in furtherance of the conspiracy of which his client is accused, his testimony will be prejudicial to his client. Second, the continuation of Inserni's legal representation of Zabala–Marti will completely eliminate the possibility of a cross-examination of a government witness, and may severely limit or restrict the defense strategies or tactics that would otherwise be available to a non-conflicted counsel. Accordingly, based on his ethical duties to his client and the potential for prejudice that his oral testimony could result in, we find that Inserni himself should have felt compelled to step down from representing Zabala–Marti. *See U.S. v. Gaitan–Ayala,* CR No. 07–00268–01, 2008 WL 1752678 at *5 (D.Hawai'i April 17, 2008). Given that he has not, this Court is forced to find him unqualified to continue to represent Zabala–Marti.

### 3. Third Objection: *U.S. v. Gonzalez Lopez*

Zabala–Marti also objects to the Magistrate Judge's lack of reference to *U.S. v. Gonzalez–Lopez,* 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), in the R & R. According to Zabala–Marti, the Supreme Court held in *Gonzalez–Lopez* that the denial of counsel of choice in circumstances such as the ones in this case constitutes structural error. In its response, the government argues that the controversy before the Supreme Court in *Gonzalez–Lopez* is different from the one in the instant case, and that contrary to Zabala–Marti's contention, *Gonzalez–Lopez* supports the government's position.

In *U.S. v. Gonzalez–Lopez,* 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), the government conceded that the defendant's Sixth Amendment right was violated because the disqualification of his chosen counsel was erroneous,[6] but argued that the violation was not "complete" unless the defendant could show that substitute counsel was ineffective within the meaning of *Strickland v. Washington,* 466 U.S. 668, 691–696, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); that is, that substitute counsel's performance was deficient and the defendant was prejudiced by it. The Supreme Court held that once an "erroneous deprivation" took place, "[n]o additional showing of prejudice is required to make the violation 'complete.'" *Gonzalez–Lopez,* 548 U.S. at 146, 126 S.Ct. 2557.

In *Gonzalez–Lopez,* the government didn't even dispute the Eighth Circuit Court of Appeals' conclusion that the district court erroneously deprived the defen-

---

**6.** The district court denied defendant Gonzalez–Lopez's chosen counsel's application for admission *pro hac vice* on the ground that he had violated a rule of professional conduct during an evidentiary hearing and then, with

one exception, prevented the defendant from meeting or consulting with his chosen attorney throughout the trial. *See Gonzalez–Lopez,* 548 U.S. at 142–143, 126 S.Ct. 2557.

dant of his counsel of choice. *See id.* at page 144, 126 S.Ct. 2557. That is precisely the issue at hand: whether or not the deprivation of Zabala–Marti's counsel of choice, namely, Mr. Inserni, would be erroneous. Consequently, this Court finds that the Zabala–Marti's reliance on *Gonzalez–Lopez* in support of his contentions is inapposite.

### 4. Fourth Objection: *Foster* Hearing

Zabala–Marti's fourth objections is that the Magistrate Judge reached its conclusions without having celebrated a proper *Foster*[7] hearing.

In *U.S. v. Foster*, 469 F.2d 1 (1st Cir. 1972), the First Circuit Court of Appeals stated as follows:

> Under those circumstances, where trial commences after the publication date of this opinion, it shall be the duty of the trial court, as early in the litigation as practicable, to comment on some of the risks confronted **where defendants are jointly represented** to insure that defendants are aware of such risks, and to inquire diligently whether they have discussed the risks with their attorney, and whether they understand that they may retain separate counsel, or if qualified, may have such counsel appointed by the court and paid for by the government.

*Foster*, 469 F.2d at 4–5 (emphasis ours). As informed to the parties during the hearing held on February 25, 2009, *Foster* is inapplicable to the case at hand inasmuch as the issue before the Court is not one of conflict of interest because of joint representation.

When facing these types of controversies, a district court should not make the decision to disqualify summarily. *See Lanoue*, 137 F.3d at 664. As recommended by the First Circuit in *Lanoue*, this Court

has "held a hearing and allowed each side to present its arguments for and against disqualification." *Id.* Accordingly, this Court has complied with the directives of the First Circuit Court of Appeals in the exercise of our considerable discretion in the decision to disqualify an attorney for a potential conflict of interest.

### 5. Waiver of Conflict

Finally, Zabala–Marti requests that this Court consider his waiver of conflict before a decision to disqualify his attorney from his legal representation is rendered.

In *Lanoue*, the First Circuit upheld a district court's decision to disqualify an attorney in the face of an issue that only reached "the outer limits of potential conflict," *Lanoue*, 137 F.3d at 664, and even where the defendant waived any right to conflict-free representation. *Id.*

> [T]he potential for conflict is a matter that is uniquely factual and presents a special dilemma for trial courts. If the attorney is allowed to continue and the conflict does arise then the defendant may not receive the representation to which he is entitled, resulting in an ineffective assistance of counsel appeal. The Supreme Court has recognized the willingness of Courts of Appeals to entertain ineffective assistance claims from defendants who have **specifically waived the right to conflict-free counsel.**

*Lanoue*, 137 F.3d at 664 (*citing Wheat*, 486 U.S. at 162, 108 S.Ct. 1692) (internal quotation marks omitted) (emphasis ours).

Keeping the co-defendant's best interests in mind, this Court must pass judgment on the issue of whether or not to allow Zabala–Marti's waiver of a conflict of interest in this "murkier pre-trial context" as opposed to with the "wisdom of hind-

---

7.  *U.S. v. Foster,* 469 F.2d 1 (1st Cir.1972).

sight." *Wheat*, 486 U.S. at 162–163, 108 S.Ct. 1692. After carefully evaluating the facts of this case and applying the aforementioned principles to the controversy at hand, the Court concludes that Inserni has a serious potential conflict of interest in his representation of Zabala–Marti that substantially compromises his effectiveness as counsel and threatens the integrity of the adversarial process. Despite Zabala–Marti's waiver, this Court finds that Atty. Inserni's disqualification is required under the Sixth Amendment.

## V.  CONCLUSION

For the reasons set forth above, the Court **ADOPTS** the R & R (Docket No. 996) in its entirety. The government has demonstrated a serious potential conflict that overcomes the presumption in favor of Zabala–Marti's counsel of choice, and thus, Attorney Frank D. Inserni–Milam is hereby disqualified from representing defendant Jose Manuel Zabala–Marti in the instant case. Co-defendant Zabala–Marti is hereby ordered to notify to the Court in writing the name of his new counsel of choice within ten (10) days of this order.

**IT IS SO ORDERED.**